Ohio Civil Rights Commission, Appellant, *v.* Lysyj, d. b. a. Kent Trailer Park, Appellee.

(No. 73-811—Decided June 12, 1974.)

218

*Mr. William J. Brown,* attorney general, *Mr. Andrew J. Ruzicho, Mr. Kenneth Montlack* and *Mr. Terence L. Blackburn,* for appellant.
*Mr. James G. Ulrich,* for appellee.

*Per Curiam.* Under R. C. 4112.02(G), it is an unlawful discriminatory practice "for any proprietor or his employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, national origin, or ancestry, the full enjoyment of the ac-

commodations, advantages, facilities, or privileges thereof.''

"Place of public accommodation" is defined in R. C. 4112.01(I), as including "any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, or other place for the sale of merchandise, or any other place of public accommodation or amusement where the accommodation, advantages, facilities, or privileges thereof are available to the public.''

Appellee contends that he has not engaged in an unlawful discriminatory practice, within the meaning of R. C. 4112.02(G) and R. C. 4112.01(I) for the reasons that: (1) A trailer park is not a "place of public accommodation," as that phrase is defined in R. C. 4112.01(I); and (2) even if a trailer park is held to be a place of public accommodation within the purview of R. C. 4112.01(I), complainant below failed to show that appellee denied her the full enjoyment of such place because of her race or color.

Appellee, however, underestimates the force of those statutes and the public policy underlying their enactment. By the adoption of the "public accommodation" amendments to Chapter 4112, the General Assembly enunciated its purpose that illegal discrimination in places of public accommodation be totally and finally eradicated, to the end that full enjoyment of such places be available to all persons, regardless of race, color, religion, national origin or ancestry.

Prior to the adoption of R. C. 4112.02(G) and 4112.01 (I), the only remedy available to those discriminated against in places of public accommodation was under R. C. 2901.35. That statute proved to be ineffective as a vehicle for eliminating such discrimination. As a criminal statute in derogation of the common law, R. C. 2901.35 was subject to rules of strict construction. See *Fletcher* v. *Coney Island* (1956), 165 Ohio St. 150, 134 N. E. 2d 371. Consequently, in particular circumstances, the statute was held inapplicable to establishments that might otherwise have been considered places of public accommodation. *E.g., Harvey* v. *Sissle* (1936), 53 Ohio App. 405, 5 N. E. 2d 410.

However, R. C. 4112.02(G) and 4112.01(I) are remedial statutes and are unbounded by the rules of strict construction that governed R. C. 2901.35. R. C. 1.11. When determining the scope of the "public accommodations" amendments to Chapter 4112, the commission, initially, and the courts, upon review, are to construe those statutes liberally in order to effectuate the legislative purpose and fundamental policy implicit in their enactment, and to assure that the rights granted by the statutes are not defeated by overly restrictive interpretation. R. C. 4112.08; R. C. 1.11.

In this regard, although trailer parks are not one of the establishments specifically enumerated in R. C. 4112.-01(I), they may nevertheless fall within the purview of that statute by virtue of the omnibus clause contained therein. In determining whether a trailer park is encompassed by that clause, the doctrine of *ejusdem generis* is applicable. However, like all rules of statutory construction, the doctrine is applicable only to the extent that it aids in ascertaining the true meaning of the statute.

The establishments specifically delineated in R. C. 4112.01(I) all display several features of distinguishing similarity that indicate the intended scope of the omnibus clause. Each place offers accommodations, advantages, facilities or privileges to a substantial public. Secondly, each place offers its accommodations to the public on a nonsocial, sporadic, impersonal and nongratuitous basis. See Van Alstyne, Civil Rights: A New Public Accommodations Law for Ohio, 22 Ohio St. L. J. 683.

The instant trailer park evidences these attributes as fully as an inn, a restaurant, an eating house, or any of the other establishments specifically set forth in R. C. 4112.01(I). A trailer park which offers its facilities and accommodations, including rental space for trailers and mobile homes, to the public on a nonsocial, sporadic, impersonal and nongratuitous basis is a place of "public accommodation" within the meaning of R. C. 4112.01(I).

In support of his contention that he has not unlawfully discriminated in a manner prohibited by R. C. 4112.02(G),

appellee argues that the proscriptions of that statute extend only to direct discrimination on the basis of race or color, and that the statute has no application to indirect discrimination against a person on the basis of the race or color of his associates. However, acceptance of that position would result in an overly restrictive interpretation of R. C. 4112.02(G).

The protection afforded by R. C. 4112.02(G) cannot be held to extend only to persons of a single or minority race. When determining whether there has been unlawful discrimination under R. C. 4112.02(G), the test is simply whether the proprietor, keeper, manager or employee of a place of public accommodation has denied to *any* person the full enjoyment of such place for reasons not applicable alike to *all* persons, irrespective of race, color, religion, national origin or ancestry.

In the case at bar, the record establishes that appellee denied Miss Beeler the full enjoyment of the facilities of his trailer park because she was white and was entertaining someone who was black. A principal motivation for his action was Miss Beeler's race, and his conduct constituted unlawful discrimination within the meaning of R. C. 4112.02(G).

In its order finding appellee had engaged in an unlawful discriminatory practice, appellant directed appellee to pay compensatory and punitive damages. Appellant claims the power to award such damages on the basis of the "affirmative action" clause of R. C. 4112.05(G). In pertinent part, R. C. 4112.05(G) provides:

"If * * * the commission determines that the respondent has engaged in * * * any unlawful discriminatory practice * * * the commission shall * * * cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such further affirmative or other action as will effectuate the purposes of Sections 4112.01 to 4112.08, of the Revised Code, including, but not limited to, hiring, reinstatement or upgrading of employees with, or without, back pay, admission or restoration to union member-

222

ship, including a requirement for reports of the manner of compliance. * * *"

The power to award damages to a person suffering loss as a result of the unlawful action of another has traditionally been limited to judicial proceedings. We are not willing to imply a grant of that power to an administrative agency.*

We find nothing in R. C. 4112.05(G) which indicates that the General Assembly attempted to authorize appellant to award either compensatory or punitive damages. The authority included in the statute to award "back pay" refers to a specific and limited type of remedy to be used in fair employment cases. It does not constitute a broad grant of power. The authority to take "affirmative action" may well include extensive powers to effectuate the purpose of the Civil Rights Acts, but, under existing statutory language, those powers are to be directed towards ending the unlawful discriminatory practice and securing compliance with the cease and desist order. If the General Assembly had intended to authorize the commission to grant compensatory or punitive damages, it would have been a simple matter to explicitly so provide, as was done elsewhere in the Act. See, e. g., R. C. 4112.051(E). Appellant does not now have the power to award either compensatory or punitive damages.

The judgment of the Court of Appeals is reversed and the order of the Civil Rights Commission, except with regard to the payment of compensatory and punitive damages, is affirmed.

*Judgment reversed.*

O'NEILL, HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

---

*Indeed, a question which we need not now decide is whether, by statute, such a power can be lodged in other than a judicial tribunal.