[No. S009487. Dec. 20, 1990.]

PERALTA COMMUNITY COLLEGE DISTRICT, Plaintiff and Respondent, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION, Defendant and Appellant;
ROSE BROWN, Real Party in Interest and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, and Marian M. Johnston, Deputy Attorney General, for Defendant and Appellant.

Richard J. Moore, County Counsel, and William E. Rundstron, Deputy County Counsel, for Plaintiff and Respondent.

Max E. Robinson, County Counsel (Fresno), J. Wesley Merritt, Deputy County Counsel, Michael D. Ott, County Counsel (Madera), Greg Kamptner, Deputy County Counsel, Behrens & Viau, Jerome M. Behrens, Burke, Williams & Sorenson and Richard R. Terzian as Amici Curiae on behalf of Plaintiff and Respondent.

Vivian Schneider for Real Party in Interest and Respondent.

**OPINION**

**PANELLI, J.**—In *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323] (hereafter *Dyna-Med*) we held that the California Fair Employment and Housing Act (FEHA or Act) (Gov. Code, § 12900 et seq.)[1] does not authorize the Fair

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Employment and Housing Commission (Commission) to award punitive damages. In the present case we consider whether the Commission has statutory authority to award compensatory damages, a question we reserved in *Dyna-Med*.

## I. *Facts*

Rose Brown was a temporary employee with the Peralta Community College District (Peralta) during the 1980-1981 school year. She was terminated in April of 1981. Shortly after her termination, she filed a complaint with the Department of Fair Employment and Housing (the Department), in which she alleged that her immediate supervisor had subjected her to various acts of sexual harassment. The Department filed an accusation with the Commission. Following a hearing, the Commission found in Ms. Brown's favor and awarded her $374.55 for her out-of-pocket expenses and $20,000 "to compensate her for the damage to her dignity and esteem, and [for] her humiliation, embarrassment, emotional pain and distress."

Peralta petitioned the superior court for a writ of administrative mandamus. (Code Civ. Proc., § 1094.5.) The superior court denied the petition as to the Commission's findings of sexual harassment, but ordered stricken that part of the decision awarding Ms. Brown compensatory damages, as not within the authority of the Commission. On appeal by the Commission, the Court of Appeal, one justice dissenting, reversed. The court held that the Commission is authorized by the FEHA to award compensatory damages.

Because there is a conflict among the Courts of Appeal concerning the Commission's authority to award compensatory damages, we granted review to secure uniformity of decision.

## II. *Analysis*

### A. *Background*

In *Dyna-Med, supra*, 43 Cal.3d 1379, we reviewed the origins, purposes and provisions of the FEHA. The California Fair Employment Practice Act (FEPA) (former Lab. Code, § 1410 et seq.) was enacted in 1959 and recodified in 1980 as part of the FEHA (Stats. 1980, ch. 992, § 4, p. 3140 et seq.). The law establishes that freedom from discrimination in employment on specified grounds, including sex, is a civil right (§ 12921) and such discrimination is against public policy (§ 12920). The law declares

discrimination or harassment[2] on the specified grounds an unlawful employment practice. (§ 12940, subd. (h).)

The statute creates two administrative bodies: the Department, whose function is to investigate, conciliate, and seek redress for claimed discrimination (§§ 12901, 12930), and the Commission, which performs adjudicatory and rulemaking functions (§§ 12903, 12935). An aggrieved person may file a complaint with the Department (§ 12960), which must promptly investigate (§ 12963). If the Department deems a claim valid it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate, the Department may issue an accusation to be heard by the Commission. (§§ 12965, subd. (a), 12969.)

If the Department fails to issue an accusation within 150 days after the filing of the complaint, or if it earlier determines not to prosecute the case and the matter is not otherwise resolved, the Department must give the complainant a "right to sue" letter. The complainant may then bring a civil suit in superior court. (§ 12965, subd. (b); *Dyna-Med, supra*, 43 Cal.3d at pp. 1382-1384; *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213-214 [185 Cal.Rptr. 270, 649 P.2d 912] (hereafter *Commodore Home Systems*).) ■ In a private action under the FEHA, the superior court may award compensatory and punitive damages. (*State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 429 [217 Cal.Rptr. 16, 703 P.2d 354]; *Commodore Home Systems, supra*, 32 Cal.3d at p. 221.)

When, as in the case at bench, an accusation issues, the Commission holds a hearing. The hearings are full evidentiary proceedings governed by the California rules of evidence and conducted in accordance with the California Administrative Procedure Act (§ 11500 et seq.). (§ 12972.) The Department serves as prosecutor and advocate on the complainant's behalf and also bears the costs of the hearing. (§ 12969.) The hearing is presided

---

[2] The Commission has defined sexual harassment as "verbal, physical, or sexual behavior directed at an individual because of her, or his, gender." (*Dept. Fair Emp. & Hous.* v. *Ambylou Enterprises, Inc.* (1982) No. 82-06, FEHC Precedential Decisions 1982-1983, CEB 3, p. 6; Cal. Code Regs., tit. 2, § 7287.6, subd. (b)(1).)

Concerning harassment generally, the Commission has stated that "[a]lmost any type of conduct may constitute harassment. The potential range includes, but is not limited to, conduct which is verbal (such as epithets, derogatory comments or slurs), physical (such as assault, impeding or blocking movement, or any physical interference with normal work or movement), or visual (the display of pictures, writings, objects, or photographs which are derogatory or offensive). (Cal. [Code Regs.] tit. 2, § 7287.6, subd. (b)(1).)" (*Dept. Fair Emp. & Hous.* v. *Fresno Hilton Hotel* (1984) No. 84-03, FEHC Precedential Decisions 1984-1985, CEB 2, p. 28, fn. 7.)

over by an administrative law judge (ALJ) (§ 11512, subd. (a)), who renders a proposed decision to the Commission, which then either adopts the decision as its own or, after reviewing the administrative record, adopts a different decision (§ 11517). Either party can petition the superior court for a writ of administrative mandamus. (§ 11523; Code Civ. Proc., § 1094.5.)

If the Commission finds that the respondent employer or labor union has engaged in an unlawful discrimination practice, it is required to state its findings of fact and determination and to issue and serve on the parties a cease and desist order. (§ 12970, subd. (a).) In addition, pursuant to section 12970, subdivision (a), the Commission is authorized to require the respondent to "take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of [the FEHA], and including a requirement for report of the manner of compliance." Because it is undisputed that the Commission's authority must come from the Act, our disposition of the instant case turns on the meaning of this latter provision.

In concluding that the statute authorized the Commission to award compensatory damages, the Court of Appeal first looked to the words of the statute. The court observed that the phrase "including, but not limited to" enlarged the Commission's authority, and that the statute authorizes the Commission to fashion such remedies as "in the judgment of the commission" will effectuate the purposes of the Act. (§ 12970, subd. (a).) From these phrases, taken together with the legislative directive that the Act is to be "construed liberally for the accomplishment of [its] purposes" (§ 12993, subd. (a)), the court determined that the plain language of the statute allowed compensatory damages, if the judgment of the Commission is that the damages are necessary.

The Court of Appeal next considered the legislative intent in enacting the law. The purpose of the Act, the court noted, is to "provide effective remedies which will eliminate such discriminatory practices" that are contrary to the public policy of the state. (§ 12920; see *Commodore Home Systems, supra*, 32 Cal.3d at p. 220.) Compensatory damages are a necessary and effective remedy, the court concluded, because such damages are effective at both punishing and deterring and, as in the instant case, may provide the only suitable remedy available to the victim of the unlawful discrimination.[3] Furthermore, the availability of compensatory damages may actually pro-

---

[3] The Department did not seek backpay or reinstatement of Ms. Brown, who, as indicated, was a temporary employee, nor did the Commission make a finding that her termination was the result of sexual harassment.

mote the important conference and conciliation goals of the Act, in that employers may be more willing to confer and negotiate if they know the Commission can impose damages against them.

In *Dyna-Med, supra*, 43 Cal.3d 1379, decided after the Court of Appeal's opinion in this case, we rejected the argument that the expansive language of section 12970, subdivision (a), taken together with the legislative statement of purpose (§ 12920) and directive that the Act should be liberally construed (§ 12993, subd. (a)), authorized the Commission to award punitive damages. The statutorily authorized remedies, we noted, are "exclusively corrective and equitable in kind. They relate to matters which serve to make the aggrieved employee whole in the context of the employment. [¶] Punitive damages, by contrast, are neither equitable nor corrective; punitive damages serve but one purpose—to punish and through punishment, to deter." (43 Cal.3d at p. 1387.) Consequently, although we recognized that in their deterrent effect punitive damages would further the purpose of the Act to eliminate unlawful discrimination, in light of the "extraordinary nature" of such damages we found the foregoing factors "insufficient to support an inference that the Legislature intended sub silentio to empower the commission to impose punitive damages." (*Id.* at p. 1389.)

Seeking to distinguish *Dyna-Med, supra*, 43 Cal.3d 1379, the Attorney General argues that, unlike punitive damages, compensatory damages are of the same make-whole kind as the other statutorily enumerated remedies. Compensatory damages include out-of-pocket losses and general damages for emotional distress. (See *Memphis Community School Dist.* v. *Stachura* (1986) 477 U.S. 299, 307 [91 L.Ed.2d 249, 258-259, 106 S.Ct. 2537]; *Hess* v. *Fair Employment & Housing Com.* (1982) 138 Cal.App.3d 232, 237 [187 Cal.Rptr. 712, 33 A.L.R.4th 958].) Emotional distress, he observes, is a compensable injury (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 711 [190 Cal.Rptr. 494, 660 P.2d 1168]), and courts have consistently recognized that emotional and mental injuries often occur as a result of discrimination. (E.g., *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-498 [86 Cal.Rptr. 88, 468 P.2d 216]; *Hess* v. *Fair Employment & Housing Com., supra*; *Woods-Drake* v. *Lundy* (5th Cir. 1982) 667 F.2d 1198, 1203.) The state Legislature, he maintains, impliedly recognized this concept when in 1982 it amended the Act to provide, inter alia, that "[l]oss of tangible job benefits shall not be necessary in order to establish harassment." (Former § 12940, subd. (i), see now § 12940, subd. (h).) Often, as in the instant case (see fn. 3, *ante*), compensatory damages are the only significant remedy available to the victim of harassment. Consequently, the Commission's authority to award compensatory damages must be

upheld in order to serve public policy concerns, preserve the Commission as an effective enforcement mechanism, and avoid constitutional equal protection problems; any decision to the contrary, the Attorney General urges, would both destroy the effectiveness of the Commission and also deny meaningful relief for many of the most meritorious discrimination claims.

Before addressing the Attorney General's argument, we think it important to emphasize what this case is *not* about. ■ There is absolutely no dispute in this case that employment discrimination, including sexual harassment as occurred here, can cause emotional distress,[4] that such distress is a compensable injury under traditional theories of tort law (e.g., *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 952-953 [160 Cal.Rptr. 141, 603 P.2d 58]; *Alcorn v. Anbro Engineering, Inc., supra*, 2 Cal.3d 493, 498), or that courts in appropriate cases may award an injured employee who successfully asserts a statutory cause of action both punitive and compensatory damages (*Commodore Home Systems, supra*, 32 Cal.3d at p. 215). Nor is there at issue the validity of an express statutory authorization for an administrative award of compensatory damages. (Cf. §§ 12987, subd. (2) [authorizing Commission to award "actual damages" in housing discrimination cases], 19702, subd. (e) [authorizing State Personnel Board to award compensatory damages in employment discrimination cases].) ■ Rather, the sole issue before us is whether under the employment discrimination provisions of the FEHA, which make no reference to compensatory or any damages, the Commission has the authority to award unlimited compensatory damages, or must an employee who seeks such damages pursue his or her judicial remedies in a court action.

## B. *The Statute*

As in *Dyna-Med, supra*, 43 Cal.3d 1379, we start, as we must, with the statute itself. (*Id.* at p. 1386.) The stated purpose of the FEHA is to provide effective remedies that will eliminate discriminatory practices. (§ 12920; *Dyna-Med, supra*, 43 Cal.3d at p. 1387.) To this end the Legislature, as noted, has authorized the Commission, on finding that a respondent employer or labor union has engaged in an unlawful discrimination practice, to issue an order requiring the respondent to cease and desist from the practice and "to take *such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to*

---

[4] We use the term "emotional distress" to refer to the full gamut of intangible mental suffering, including not only physical pain, but also "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal." (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892-893 [103 Cal.Rptr. 856, 500 P.2d 880].)

*membership in any respondent labor organization*, as in the judgment of the commission, will effectuate the purposes of [the Act], and including a requirement for report of the manner of compliance." (§ 12970, subd. (a), italics added.)

Construing section 12970 in light of established principles of statutory construction, in *Dyna-Med* we concluded that the Legislature had intended to authorize the Commission *"to take such other remedial action as in its judgment seems appropriate to redress a particular unlawful employment practice and to prevent its recurrence, thus eliminating the practice"* (43 Cal.3d at p. 1390, fn. omitted, italics added). The statutorily authorized remedies, we observed, "are exclusively corrective and equitable in kind. *They relate to matters which serve to make the aggrieved employee whole in the context of the employment."* (*Id.* at p. 1387, italics added.)

Although compensatory damages, as the Attorney General argues, may serve to make whole an employee who suffers emotional distress, and may in addition deter the respondent and other employers from future discriminatory practices, unlike the other statutory remedies that focus on corrective measures the employer can take *in the workplace*, this remedy goes substantially beyond the context of the employment. Compensatory damages, often amounting to tens of thousands of dollars,[5] serve to recompense the victim of discrimination not just for the tangible detriment to the victim's employment situation, but also for the intangible injury to his or her psyche (see fn. 4, *ante*) suffered as a result of the unlawful action of another and, as such, are designed to make the victim whole in relation to the offender in the manner of traditional tort damages awarded by a jury in a private action in a court of law. (See generally Prosser & Keeton on Torts (5th ed. 1984) §§ 1-2, pp. 5-7.) This effect, we believe, is beyond the scope of the Legislature's intended purpose in enacting the FEHA to prevent and eliminate discrimination in the workplace. (Cf. *Gutwein* v. *Easton Publishing Company* (1974) 272 Md. 563 [325 A.2d 740, 743, 85 A.L.R.3d 340].)

---

[5] For the dollar amounts of emotional distress damages awarded by the Commission in employment cases, see, e.g., *Dept. Fair Emp. & Hous.* v. *Ambylou Enterprises, Inc., supra*, FEHC Dec. No. 82-06, CEB 3 (harassment; $15,000); *Dept. Fair Emp. & Hous.* v. *Marriott Hotel* (1983) No. 83-10, FEHC Precedential Decisions 1982-1983, CEB 11 (harassment; $5,000); *Dept. Fair Emp. & Hous.* v. *C.E. Miller Corp., et al.* (1984) No. 84-02, FEHC Precedential Decisions 1984-1985, CEB 1 (discrimination; $10,000); *Dept. Fair Emp. & Hous.* v. *Bee Hive Answering Service et al.* (1984) No. 84-16, FEHC Precedential Decisions 1984-1985, CEB 8 (harassment, discrimination and retaliation; $35,000); *Dept. Fair Emp. & Hous.* v. *Hart and Starkey, Inc., et al.* (1984) No. 84-23, FEHC Precedential Decisions 1984-1985, CEB 9 (harassment; $135,000 divided among four victims); *Dept. Fair Emp. & Hous.* v. *La Victoria Tortilleria, Inc.* (1985) No. 85-04, FEHC Precedential Decisions 1984-1985, CEB 13 (harassment; $40,000); *Dept. Fair Emp. & Hous.* v. *California State University Sacramento* (1988) No. 88-08, FEHC Precedential Decisions 1988-1989, CEB 3 (discrimination; $75,000).

Analysis of the relevant statutory language supports our conclusion. Section 12970, subdivision (a) authorizes the Commission to order the respondent to take *"such action"* as the Commission believes will effectuate the purposes of the Act. (Italics added.) Unlike hiring, reinstatement or upgrading, with or without backpay, and the other specified remedies, payment of compensatory damages arguably is not, in the common usage of the term, an *action* to be taken by the employer, nor, in any event, is payment of damages the *kind of specific and limited action* directed to elimination of discrimination and its effects in the workplace as the Commission is otherwise empowered to require the employer to take.

█ " '[T]he doctrine of *ejusdem generis* . . . states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676].) Application of the doctrine of *ejusdem generis* is particularly appropriate when, as here, the Legislature in related and otherwise similar statutes has expressly provided for the remedy in question and thus has demonstrated the ability, had it wished, to do so in section 12970. █ "Where the [Legislature] has demonstrated the ability to make [its] intent clear, it is not the province of this court to imply an intent left unexpressed." (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].)

Thus, section 12987 of the FEHA, relating to housing discrimination, authorizes the Commission to order the respondent to cease and desist from the discriminatory practice and "to take such actions, as, in the judgment of the commission, will effectuate the purpose of this part, *including, but not limited to*, any of the following: [¶] (1) The sale or rental of the housing accommodation . . . or . . . of a like housing accommodation, . . . [¶] (2) The payment of punitive damages in an amount not to exceed one thousand dollars . . . *and the payment of actual damages.*" (Italics added.)[6] Although of separate origin, the housing and employment provisions of the FEHA

---

[6] Until 1981 the Commission's authority to award damages in housing discrimination cases was limited, first to $500 and later to $1,000. (*Dyna-Med, supra*, 43 Cal.3d at p. 1394, fn. 17.) In 1981 the Act was amended to remove the limit on the amount of compensatory damages, while retaining a $1,000 limit, adjusted for inflation, on punitive damages. (§ 12987, subd. (2); Stats. 1981, ch. 899, § 3, p. 3424.)

were combined and chaptered together in 1980 to form the FEHA, with enforcement of both sections of the Act vested in the Commission. (Stats. 1980, ch. 992, p. 3138 et seq.; see *Dyna-Med, supra*, 43 Cal.3d at p. 1394.) Had the Legislature intended to authorize the Commission to award damages in employment as in housing cases, it could easily have expressly so provided at that time, yet it did not. (See generally *Dyna-Med, supra*, at pp. 1394-1396.)

Section 19702, subdivision (e) of the Civil Service Act, relating to the Civil Service Personnel Board, similarly authorizes the board on a finding of discrimination to issue an order "requiring the appointing authority to cause the discrimination to cease and desist and to take any action, *including, but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay, *and compensatory damages*, which in the judgment of the board, will effectuate the purposes of this part." (Italics added.) As we observed in *Dyna-Med, supra*, "if, as Commission argues, the nonexhaustive language of section 12970 were sufficient to embrace the authority to award damages, the specific references to damages in both the Civil Service Act and the housing section of the FEHA would be mere surplusage. ▪ '[S]tatutes must be harmonized, both internally and with each other, to the extent possible. [Citations.] Interpretive constructions which render some words surplusage . . . are to be avoided. [Citations.]' [Citation.]" (43 Cal.3d at p. 1397, fn. omitted.)

▪ In light of the foregoing, we are reluctant to infer that through the expansive language of section 12970 the Legislature intended by implication to grant the Commission the authority not only to award compensatory damages, but to award such damages without limit.[7]

C. *Legislative Intent*

Contrary to our analysis, the Attorney General argues that the legislative intent has always been, or at the least is now, that the FEHA remedy intangible as well as tangible losses resulting from discrimination. He points to Assembly Bill No. 1163, 1987-1988 Regular Session, passed by the Legislature after our decision in *Dyna-Med, supra*, 43 Cal.3d 1379, but vetoed by the Governor, who described the legislation as "premature" in light of the pendency of the instant case. Assembly Bill No. 1163 would have amended

---

[7] Because we resolve this case on the basis of statutory interpretation, we need not determine whether an administrative agency's award of unlimited compensatory damages is violative of the judicial powers clause (Cal. Const., art. VI, § 1). (Cf. *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348 [261 Cal.Rptr. 318, 777 P.2d 91]; *Youst* v. *Longo* (1987) 43 Cal.3d 64, 80 [233 Cal.Rptr. 294, 729 P.2d 728].)

section 12970 to explicitly authorize the Commission to award "actual damages" (Assem. Bill No. 1163, § 3) and specified that its remedy provisions were "clarifying and declaratory of existing law" (Assem. Bill No. 1163, § 1, subd. (c)).

■ The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law. (*Teamsters* v. *United States* (1977) 431 U.S. 324, 354, fn. 39 [233 Cal.Rptr. 294, 729 P.2d 728]; see Dickerson, The Interpretation and Application of Statutes (1975) p. 179.) This is especially true when, as here, such declared intent is without objective support in either the language or history of the legislation and (until recently) is contrary as well to the practice of the affected agency.[8] That the Legislature, as indicated in Assembly Bill No. 1163, may *now* intend that intangible losses be remedied does not of itself empower the Commission to award damages for such losses; the Commission is bound by the statute presently in effect, not by a legislative statement of intent that failed to become law.

■ The Attorney General points also to Assembly Bill No. 1985, 1981-1982 Regular Session (Stats. 1982, ch. 1193, § 2, pp. 4259-4260), which amended the FEHA expressly to prohibit harassment and to provide that "[l]oss of tangible job benefits shall not be necessary in order to establish harassment. The provisions of this subdivision are declaratory of existing law . . . ." This legislative declaration, however, does not serve to amend the remedy provisions of the FEHA. Rather, the statement confirms that harassment on a basis enumerated in the Act constitutes unlawful discrimination regardless of whether the victim can show a loss of tangible job benefits. (See *Dept. Fair Emp. & Hous.* v. *Fresno Hilton Hotel, supra*, FEHC Dec. No. 84-03, CEB 2, p. 28; *Dept. Fair Emp. & Hous.* v. *La Victoria Tortilleria, supra*, FEHC Dec. No. 85-04, CEB 13, p. 14.) This view is consistent with the Commission's definition of sexual harassment (see fn. 2, *ante*), which describes activity that does not necessarily impact on the victim's employment status. (See also *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 64-67 [91 L.Ed.2d 49, 57-60, 106 S.Ct. 2399] [discussing "hostile environment" harassment].) Once harassment has been established as provided in section 12940, subdivision (h), the Commission is authorized,

---

[8] The Commission did not award compensatory damages in employment discrimination cases until 1982, when it did so pursuant to regulation promulgated in 1980 and repealed in 1985. (*Dept. Fair Emp. & Hous.* v. *Ambylou Enterprises, Inc., supra*, FEHC Dec. No. 82-06, CEB 3; see *Dyna-Med, supra*, 43 Cal.3d at p. 1388, fn. 9.)

Under the current regulations, adopted in 1985, the Commission is authorized to order payment of backpay, injunctive and other equitable relief, including, but not limited to, cease and desist orders, hiring, reinstatement or upgrading of employees, and prospective relief, e.g., rightful place and front pay. (Cal. Code Regs., tit. 2, § 7286.9.) The Commission, however, continues to award compensatory damages.

as in other cases, to order the employer to take appropriate steps to eliminate the practice. (§ 12970, subd. (a).)[9]

The Attorney General argues, however, that in harassment cases, as here, where no detriment to the employment has been shown and the employee's out-of-pocket losses are minimal, the only injury is emotional distress and the only redress is compensatory damages. This argument, we believe, takes too narrow a view of both the problem and the purpose of the Act, as well as the available remedies.

While emotional distress may be the individual employee's only injury, the practice of harassment once proven remains to be eliminated. Consequently, if the employee's complaint is administratively determined, on finding harassment the Commission will order such corrective measures as will benefit both the complainant *and others*, including that the employer cease and desist the practice, report the manner of compliance, and take other remedial action as appropriate.[10] In addition, the Commission will thereafter conduct a compliance review to see that the employer is fully obeying the order. (§ 12973.) Hence, the administrative procedure serves the statutory purpose of providing effective remedies that will eliminate the discriminatory practice and prevent its recurrence, not just as to the immediate victim, but as to all employees, present and future (§ 12920).[11]

[9] In *Dept. Fair Emp. & Hous. v. Fresno Hilton Hotel, supra*, FEHC Dec. No. 84-03, CEB 2, page 41, the Commission noted that "Because sexual harassment is insidious and has the ready potential to disrupt not only the life of its victims, but the entire workplace as well, it is incumbent upon employers to act affirmatively to prevent it. The Act requires that employers 'take all reasonable steps to prevent harassment from occurring.' [§ 12940, subd. (h).]"

[10] In the case at bench, for example, in addition to ordering payment of compensatory damages, the Commission ordered the respondent: "1. . . . to cease and desist from discriminating against its female employees on the basis of sex; [¶] 2. To develop and disseminate a written policy regarding sexual harassment, and to conduct a training program regarding this policy at each of its campuses for all management and supervisory employees within ninety (90) days from the effective date of the Commission order herein; [¶] 3. To inform all of its employees of its policy regarding sexual harassment and of specific procedures by which employees may report incidents of sexual harassment; [¶] 4. To instruct [Ms. Brown's supervisor] specifically, concerning his obligations and duties to employees under his supervision regarding sexual harassment; [¶] 5. . . . . [¶] 6. To report to the Commission in writing describing the steps it has taken to comply with the Commission's orders; and [¶] 7. To take any other action deemed necessary, just and proper by the Commission."

[11] When in 1984 the Legislature amended former subdivision (i) of section 12940 (see now § 12940, subd. (h)), it made the following statement of policy: "It is the existing policy of the State of California, as declared by the Legislature, that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination

The administrative procedure, moreover, does not preclude the employee from instituting a private lawsuit based on nonstatutory causes of action. (See *Rojo* v. *Kliger*, *post*, at p. 82 & fn. 10 [276 Cal.Rptr. 130, 801 P.2d 373]; see *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 481 [208 Cal.Rptr. 724, 691 P.2d 272]; cf. *Alcorn* v. *Anbro Engineering, supra*, 2 Cal.3d 493, 500, fn. 7.) Furthermore, the Department in every case has the discretion to issue the complainant a "right to sue" letter, thereby clearing the way for a private civil action under the FEHA. (§ 12965, subd. (b); see, e.g., *Brown* v. *Superior Court, supra*, 37 Cal.3d 477; *Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1277-1278 [261 Cal.Rptr. 204]; *Baker* v. *Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060 [257 Cal.Rptr. 768]; *Stephens* v. *Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1399 [245 Cal.Rptr. 606]; *Ibarbia* v. *Regents of University of California* (1987) 191 Cal.App.3d 1318, 1321, fn. 1 [237 Cal.Rptr. 92]; *Monge* v. *Superior Court* (1986) 176 Cal.App.3d 503, 507 [222 Cal.Rptr. 64].)

"The FEHA," we observed in *Commodore Home Systems, supra*, 32 Cal.3d 211, "provides separate routes to resolution of claims; first, a complaint to the Department; second, if that agency fails to act, a private court action." (*Id.* at p. 217.) In providing for an administrative rather than a judicial resolution of discrimination complaints, the Legislature's objective "was to provide a 'speedy and informal' process unburdened with 'procedural technicalities.' [Citation.] 'To achieve this end the [Fair Employment Practices Commission] established procedures that are as simple and uncomplicated as possible. Complaints are drafted by laymen; the commission informally attempts to eliminate discriminatory practices before instituting formal accusations; the commission, on a finding of discrimination, may fashion remedies both to correct unique cases of such practice as well as to curb its general incidence.' " (*Dyna-Med, supra*, 43 Cal.3d at p. 1393, citing *Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 214 [98 Cal.Rptr. 467, 490 P.2d 1155] [housing discrimination].)

Under the FEHA, moreover, the Department is the plaintiff and the employee only a witness. "[T]he Department bears the expense of investigating, conciliating and, where necessary, prosecuting the action on behalf of the claimant. [Citations.] This includes the services of an attorney from the Department to try the case at no expense to the claimant. [Citation.]" (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra*, 39 Cal.3d 422, 432.)

---

by their agents, administrators, and clientele. To further this intent, the Legislature enacts this act." (Stats. 1984, ch. 1754, § 1, pp. 6403-6404.)

■ Consistent with the foregoing, we believe a primary purpose of the alternative systems of redress for employment discrimination is to permit efficient and prompt administrative disposition—without cost to the victim—of claims that are amenable to conciliation or to corrective equitable remedies, and thus do not warrant a full-scale judicial proceeding with its attendant expense and delay (see *Stearns* v. *Fair Employment Practice Com., supra,* 6 Cal.3d at p. 214), while reserving to the judicial system, with its attendant constitutional and statutory safeguards, those statutory claims that seek significant nonquantifiable monetary recompense or that the complainant wishes to join with nonstatutory causes of action.[12] Consequently, if the employee's complaint reveals significant intangible loss, such as emotional distress, or discloses facts suitable for an award of punitive damages (see Civ. Code, § 3294; *Dyna-Med, supra,* 43 Cal.3d at p. 1404), or the complainant wishes to join a statutory cause of action with other legal causes of action, the Department may forgo the administrative procedure in favor of a private civil action by the employee to recover all of his or her damages, including mental anguish and distress. (*Commodore Home Systems, supra,* 32 Cal.3d 211; see *Dyna-Med, supra,* 43 Cal.3d at p. 1402 [Department permits any claimant who so wishes to bring a private court action]; *Brown* v. *Superior Court, supra,* 37 Cal.3d at p. 481 [plaintiffs joined FEHA claim after Department notified them of their right to sue]; *Watson* v. *Department of Rehabilitation, supra,* 212 Cal.App.3d 1271, 1277 [Court of Appeal affirmed $1.5 million verdict on statutory causes of action]; *Stephens* v. *Coldwell Banker Commercial Group, Inc., supra,* 199 Cal.App.3d at p. 1399 [Court of Appeal affirmed verdict of $100,000 emotional distress damages and $200,000 punitive damages on statutory cause of action]; *Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 864 [193 Cal.Rptr. 760] [employee sought $1 million in punitive damages on statutory cause of action].)

Were it otherwise, as the Attorney General argues, and the Commission were authorized to award unlimited compensatory damages, no evident purpose would be served by providing alternative routes for resolution of claims. Nor would there be any standards to guide the Department in its determination as to the cases in which to seek compensatory damages rather than issue a "right to sue" letter. Finally and most significantly, the purpose of the FEHA to provide an efficient and expeditious avenue for elimination of discriminatory practices would be compromised as agency proceedings would come increasingly to resemble traditional lawsuits, a

---

[12] Another more general purpose is to lessen the burden of the trial courts and foster judicial economy by promoting the resolution of disputes by specialized boards. (*Robinson* v. *Department of Fair Employment & Housing* (1987) 192 Cal.App.3d 1414, 1417 [239 Cal.Rptr. 908].)

predictable result when general pecuniary damages for mental distress are permitted. (See *Zahorian v. Russell Fitt Real Estate Agency* (1973) 62 N.J. 399 [301 A.2d 754, 764, 61 A.L.R.3d 927] (dis. opn. of Hall, J.).)

 We conclude, therefore, that in authorizing the Commission to take such action, "including, but not limited to," the enumerated remedies, the Legislature intended to authorize the Commission to fashion such other corrective or equitable remedies as, in its expertise, it may devise to eliminate the discriminatory practice and make the employee whole in relation to the employment (see *Dyna-Med, supra*, 43 Cal.3d at pp. 1387, 1390-1391), but that the Legislature did not, by contrast, intend to authorize the Commission to adjudicate noneconomic general damage claims traditionally awarded in judicial actions between private parties (cf. *McHugh v. Santa Monica Rent Control Bd., supra*, 49 Cal.3d 348, 381, fn. 53; *Youst v. Longo, supra*, 43 Cal.3d at p. 80).

Practical considerations support our view. As the Commission itself recognized when in 1982 it first undertook to award compensatory damages, "Courts have traditionally been reluctant to award compensatory damages of this nature [for emotional distress] in the absence of circumstances which afford some guarantee of the genuineness of the claimed injury." (*Dept. Fair Emp. & Hous. v. Ambylou Enterprises, supra*, FEHC Dec. No. 82-06, CEB 3, p. 9.) Although California "has long recognized this type of injury as compensable in cases . . . which involve extreme and outrageous intentional invasions of one's mental and emotional tranquility" (*id.* at p. 10), the Commission noted that in seeking to place a dollar value on the complainant's injuries it had found little in legal authority to guide it, for the reason that "[i]t has traditionally been left to the trier of fact to assess the degree of harm suffered and to fix a monetary amount as just compensation therefor. (See, e.g., *Agarwal v. Johnson* [1979] 25 Cal.3d 932, 953 [160 Cal.Rptr. 141, 603 P.2d 58], and cases cited therein.)" (*Id.* at p. 11.)

 In *Agarwal v. Johnson, supra*, cited by the Commission, we recognized that harm suffered from emotional distress, "though less susceptible of precise measurement than more tangible pecuniary losses or physical injuries would be, is no less real or worthy of compensation." (25 Cal.3d at p. 953.) Given the intangible nature of the harm, "it is the members of the jury," we admonished, "who, when properly instructed, are in the best position to assess the degree of the harm suffered and to fix a monetary amount as just compensation therefor. [Citations.]" (*Ibid.*; see *Capelouto v. Kaiser Foundation Hospitals, supra*, 7 Cal.3d at p. 893; see also Prosser &

Keeton on Torts, *supra*, § 12 at p. 55 [referring to the difficulty of proof and measurement of damages for emotional distress].)[13]

Although we are not called upon in the instant case to determine whether the Commission's award of unlimited compensatory damages violates the right to jury trial (Cal. Const., art. I, § 16) and we express no view on that issue (cf. *McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d 348, 379-381 & fn. 53; *id.*, dis. opn. of Panelli, J., at pp. 386-387), we reaffirm the well-established principle stated in *Agarwal* v. *Johnson*, *supra*, 25 Cal.3d at page 953, that the jury, as the trier of fact, is in the best position to determine just compensation for emotional and mental distress.

### D. *Sister States and Federal Statutes*

As we noted in *Dyna-Med*, *supra*, 43 Cal.3d at page 1400, courts in our sister states are divided on the availability of compensatory damages under statutory schemes similar to ours. (See generally Annot. (1978) 85 A.L.R.3d 351, §§ 6-10, pp. 367-379.) According to the Attorney General, a review of the decisions upholding the authority of state civil rights agencies to award compensatory damages, even absent specific statutory language explicitly authorizing such awards, reveals many similarities between those laws and the FEHA. The reasoning in the cases, he urges, applies with equal force in the instant case. Thus, the decisions cite (1) the need to provide full relief to the victim of unlawful discrimination (e.g., *Bournewood Hosp.* v. *Mass. Comm. Against Discrim.* (1976) 371 Mass. 303 [358 N.E.2d 235, 242-243]; *A. P. Green Serv. D. of Bigelow-L. Corp.* v. *State F.E.P.C.* (1974) 19 Ill. App. 3d 875 [312 N.E.2d 314, 319-320]) and the remedial nature of compensatory damages (*Andersen* v. *Exxon Co.* (1982) 89 N.J. 483 [446 A.2d 486, 496]; *Chauffeurs, Loc. U. 238* v. *Civil Rights Com'n* (Iowa 1986) 394 N.W.2d 375, 383); (2) the role such damages serve in eliminating the effects of discrimination (*Williams* v. *Joyce* (Ore.Ct.App. 1971) 479 P.2d 513, 523-524 [40 A.L.R.3d 1272]); *A. P. Green Serv. D. of Bigelow-L. Corp.*, *supra*, 312 N.E. 2d at p. 319); and (3) deference to legislation granting the civil rights agency discretion to order appropriate relief

---

[13] Whether the Commission requires proof that the complainant actually suffered emotional distress or will simply infer such injury from the nature of the wrong is unclear. Although the Commission often cites evidence in the record as demonstrating emotional injury (e.g., *Dept. Fair Emp. & Hous.* v. *Ambylou Enterprises, Inc.*, *supra*, FEHC Dec. No. 82-06, CEB 3, p. 10; *Dept. Fair Emp. & Hous.* v. *Del Mar Avionics* (1985) No. 85-19, FEHC Precedential Decisions 1984-1985, CEB 16, pp. 27-28, it has stated that "[i]n any discrimination case we are permitted to infer from the circumstances of the discriminatory conduct itself that emotional injury occurred. [Citations.]" (*Dept. Fair Emp. & Hous.* v. *Bee Hive Answering Service, et al.*, *supra*, FEHC Dec. No. 84-16, CEB 8, p. 25; accord, *Dept. Fair Emp. & Hous.* v. *Hart and Starkey, Inc., et al.*, *supra*, FEHC Dec. No. 84-23, CEB 9, p. 35 [Commission can and will infer injury].)

(*Bournewood Hosp.*, *supra*, 358 N.E.2d at p. 242; *Chauffeurs, Loc. U. 238, supra*, 394 N.W.2d at p. 383).

What the Attorney General overlooks is that the issue before us is not the beneficial effect of awarding compensatory damages but, rather, whether the FEHA authorizes the Commission to make such an award. Furthermore, of the state statutes at issue in the cited cases, only those of New Jersey and Massachusetts are sufficiently similar to ours to warrant comparison.

Thus, the Iowa statute authorizes " 'remedial action,' " which includes but is not limited to " '*damages for an injury caused by the discriminatory practice which damages shall include but are not limited to actual damages . . . .*' " (*Chauffeurs, Loc. U. 238* v. *Civil Rights Com'n, supra*, 394 N.W.2d at p. 382, italics added); the FEHA, by contrast, is silent on the award of damages. The Oregon statute states its purposes are to " '*insure human dignity*' " and to " '*protect* [*the victim's*] *health* from the consequences of [discrimination]' " and its intent is to " '*provide an adequate remedy for persons aggrieved*' " by unlawful discriminatory acts; the statute authorizes a cease and desist order requiring the respondent to perform acts to carry out the purposes of the law and " '*to eliminate the effects*' " of the unlawful practice. (*Williams* v. *Joyce, supra*, 479 P.2d at pp. 523-524, italics added.) Similarly, the Illinois statute, since amended, authorized the agency to require such further affirmative or other actions " '*with respect to the complainant* as will eliminate *the effect*' " of the discriminatory practice.[14] (*A. P. Green Serv. D. of Bigelow-L. Corp.* v. *State F.E.P.C., supra*, 312 N.E.2d at p. 319, first italics in original, second italics added.) Our statute, by contrast, speaks only of remedies that will eliminate *the discriminatory practice* and makes no mention of eliminating its *effects* or of remedies *for the person aggrieved*. (§§ 12920, 12970.)

The New Jersey statute, while similar to ours, was interpreted to allow compensatory damages only in such limited amounts as may be characterized as "minor or incidental" awards. (*Zahorian* v. *Russell Fitt Real Estate Agency, supra*, 301 A.2d 754, 761-762 [$750]; see *Andersen* v. *Exxon Co., supra*, 446 A.2d 486, 496 [$500].) The Massachusetts statute, likewise similar to the FEHA (Mass. Gen. L. ch. 151B, § 5), was interpreted by the Massachusetts Supreme Judicial Court in *Bournewood Hosp.* v. *Mass. Comm. Against Discrim., supra*, 358 N.E.2d 235, as authorizing damages not merely for discrimination, but for the independent and more egregious

---

[14]The Illinois statute now expressly authorizes the payment of "actual damages . . . for injury or loss suffered by the complainant." (Ill. Rev. Stat. ch. 68, par. 8A-104 [8A Lab. Rel. Rptr. (BNA) FEPM No. 633, p. 453:2626].)

offense of *retaliation* against an employee who was "simply doing that which the law" provides is her right, i.e., filing a complaint about discrimination; the availability of damages for discrimination alone was not decided. (*Id*. at pp. 242-243; accord, *College-Town* v. *Mass. Com'n Against Discrim.* (1987) 400 Mass. 156 [508 N.E.2d 587, 594-595] [discrimination and retaliation]; but see *Buckley Nursing Home* v. *Com'n Against Discrim.* (1985) 20 Mass. App. 172 [478 N.E.2d 1292, 1299] [emotional distress damages allowed for discrimination only].)

Neither the New Jersey court's limitation on the amount of damages, nor the Massachusetts court's distinction between discrimination and retaliation, is to be found in the applicable statutes. Rather, evidently to achieve a result they found just, both courts engaged in patent judicial legislation. We are unwilling to do the same. Rather, we find persuasive the reasoning of the numerous courts in our sister states with statutes similar to ours that have concluded their statutes do not empower a commission to award nonquantifiable pain and suffering money damages for unlawful discrimination. (See *Pennsylvania Human Relations Com'n* v. *Zamantakis* (1978) 478 Pa. 454 [387 A.2d 70, 73] [stating that a majority of states have found that absent express legislative authority, a civil rights agency cannot award emotional distress damages]; accord *Woods* v. *Midwest Conveyor Co., Inc.* (1982) 231 Kan. 763 [648 P.2d 234, 241]; *McDaniel* v. *Cory* (Alaska 1981) 631 P.2d 82, 88; *Gutwein* v. *Easton Publishing Company, supra*, 325 A.2d 740, 745-747 [quoting other state courts]; *Ohio Civil Rights Commission* v. *Lysyj* (1974) 38 Ohio St.2d 217 [313 N.E.2d 3, 7, 70 A.L.R.3d 1135]; see generally Annot., *supra*, 85 A.L.R.3d at pp. 370-373.)

Like the foregoing state courts, federal courts, in interpreting the closely analogous remedy language of the National Labor Relations Act (29 U.S.C. § 141 et seq.) relating to unfair labor practices,[15] have uniformly held that monetary awards other than back pay may not be awarded (see *Dyna-Med, supra*, 43 Cal.3d 1379, 1397 and cases cited), and a majority have held likewise in interpreting the similarly analogous remedy language of title VII of the federal Civil Rights Act of 1964, relating to employment discrimination[16] (*Dyna-Med, supra*, 43 Cal.3d at pp. 1397-1398; see *Woods* v. *Midwest Conveyor Co., Inc., supra*, 648 P.2d 234, 240, citing *DeGrace* v. *Rumsfeld*

---

[15] The National Labor Relations Act authorizes the National Labor Relations Board to issue a cease and desist order and require the violator "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter . . . ." (29 U.S.C. § 160(c).)

[16] Section 706(g) of title VII of the federal Civil Rights Act authorizes the trial court to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate." (42 U.S.C. § 2000e-5(g).)

(1st Cir. 1980) 614 F.2d 796, 808; see generally Annot., Title VII—Compensatory Damages (1980) 48 A.L.R.Fed. 338 et seq.). Because the title VII remedies are judicially enforced, precedents under that statute are, in any event, of little relevance to the issue before us. (See *Commodore Home Systems, supra,* 32 Cal.3d at p. 217.)

Insofar as the Attorney General argues that denial of general compensatory damages in the administrative hearing constitutes a denial of equal protection to claimants who do not file suit in court, we disposed of the argument in *Dyna-Med, supra,* 43 Cal.3d at pages 1401-1404.

█ In sum, in view of the language and purpose of the FEHA, the failure of section 12970 expressly to authorize an award of general compensatory damages, the existence in other civil rights statutes of express authorization for such awards, the unlikelihood of a legislative grant by implication of unbridled power to an administrative agency to make monetary awards without guidelines or limitations, the cited cases from our sister states, and relevant federal precedent, we conclude that the Commission is not authorized to award compensatory damages.

The judgment of the Court of Appeal is reversed with directions to affirm the trial court's judgment.

Lucas, C. J., Mosk, J., Eagleson, J., and Arabian, J., concurred.

**BROUSSARD, J.,** Dissenting.—Having determined that the acting Dean of Students of Laney College had subjected his secretary to sexual harassment over a six-month period, including unwanted touching of her breasts and thighs, comments about her sex life, efforts to procure her as a date for himself and his friends, comments about her undergarments, continuous lewd innuendos, and finally slander of her professional competence because of her obduracy towards his sexual advances, the Fair Employment and Housing Commission (Commission) ordered, among other things, that the woman be compensated for her humiliation and distress by the payment of compensatory damages.

The majority hold that the Commission is not authorized to award compensatory damages, and that the abuse described above can adequately be addressed by an order to reinstate the employee, to cease and desist from discriminatory practices and to set up a policy regarding sexual harassment, with the Commission following up to see if there has been compliance.

These remedies, however, do not make the employee whole when reinstatement is not an issue. An employee may have stoically endured a period

of harassment without a termination of employment. Nonetheless, the employee should be made whole for suffering the deprivation of the right, assured by statute, to work in an environment free from sexual harassment and discrimination. The majority would make the administrative remedy available through the Commission a barren one for such an employee.

Under the Fair Employment and Housing Act (the Act), the Commission has authority to award compensatory damages. The purpose of the Act is to provide effective remedies which will eliminate discriminatory practices. (Gov. Code, § 12920.)[1] It is to be liberally construed to accomplish this purpose. (§ 12993, subd. (a).) If the Commission finds that an employer has engaged in a discriminatory practice, it orders the employer to cease and desist and also orders the employer "to take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this part, and including a requirement for report of the manner of compliance." (§ 12970, subd. (a).) This is expansive language, vesting in the Commission broad rather than limited power to devise effective remedies to eradicate employment discrimination. As we said so recently, the Act was "intended to authorize the commission to take such other remedial action as in its judgment seems appropriate to redress a particular unlawful employment practice and to prevent its recurrence, thus eliminating the practice." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1390 [241 Cal.Rptr. 67, 743 P.2d 1323].)

The measures the Commission may order the employer to undertake all "relate to matters which serve to make the aggrieved employee whole in the context of the employment." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d 1379, 1387.) We decided in *Dyna-Med, Inc.* that since punitive damages are not this sort of equitable, corrective measure, aimed at "making the employee whole in the context of the employment," the statute cannot be interpreted to authorize the Commission to award them. " 'Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor . . . .' [Citations.]" (*Id.* at p. 1387.)

Compensatory damages are a completely different story. It is black letter law that compensatory damage awards are intended to make the injured party whole when the injury consists of emotional distress. (See *Memphis Community School Dist.* v. *Stachura* (1986) 477 U.S. 299, 307 [91 L.Ed.2d

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

249, 258-259, 106 S.Ct. 2537]; *Capelouto* v. *Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892-893 [103 Cal.Rptr. 856, 500 P.2d 880].) Thus it is consistent with *Dyna-Med* to hold that compensatory damages, as they are not punitive but intended as compensation for injury, are within the authority of the Commission to award.

As the majority willingly acknowledge, we have recognized the emotional damage incurred by those who are subjected to racist abuse and discrimination in the workplace. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-498 [86 Cal.Rptr. 88, 468 P.2d 216]; see also *Woods-Drake* v. *Lundy* (5th Cir. 1982) 667 F.2d 1198, 1203.) Sexual harassment in the workplace inflicts grave emotional injury as well. (*Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 618 [262 Cal.Rptr. 842].) When an employee has been subjected to sexual abuse on the job, the injury normally is one which undermines personal dignity, not one which affects job security. The employee can only be made whole by an award which compensates her for emotional distress. Thus compensatory damages are precisely related to "matters which serve to make the aggrieved employee whole . . . ." Indeed, when reinstatement is not an issue because there has been no termination, compensatory damages are the only remedy which can be provided to the employee and can deter the employer from further transgressions.

The majority maintain that although compensatory damages may serve to make the employee whole, they go substantially beyond the context of the employment. The argument is that the remedies enumerated by the statute focus on corrective measures the employer can take in the workplace, while compensatory damages compensate for intangible injury and are designed to make the victim whole in relation to the offender in the manner of traditional tort damage awards in a jury trial. "This effect, we believe, is beyond the scope of the Legislature's intended purpose in enacting the FEHA to prevent and eliminate discrimination in the workplace." (See maj. opn., *ante*, at p. 49.)

The claim that compensatory damages for emotional injury caused by sexual or racial abuse are not compensation in the context of employment is difficult to understand. Obviously the abuse occurs in the context of employment; indeed, if the abuse caused a disabling injury, the employee would be entitled to a workers' compensation award to make her whole. (See *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743].) If the argument is that the payment of make-whole damages will not ameliorate the employer's conduct in the workplace, it is mistaken on two grounds. First, the argument depends upon the

mistaken assumption that the Act is intended to be wholly preventive, and not to operate to make the injured employee whole. Since the Act specifically provides for backpay awards, it is directed not only at improving the employer's behavior but also at making the abused employee whole. We recognized as much in *Dyna-Med*. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra*, 43 Cal.3d at p. 1387.) Second, as the Court of Appeal maintained, a compensatory damage award is an effective learning device for obtuse employers. "If employers are forced to compensate for all the effects of their unlawful acts, if they are hit in the pocketbook where it hurts, they will be less likely to discriminate in the future. The awarding of damages will not only deter the wrongdoer, it will send a message to other employers that they must pay for the consequences of their discrimination."

The majority express the concern that an administrative agency cannot function reliably in the inherently judicial role of assessing damages for emotional injury. (See maj. opn., *ante*, at pp. 56-57.) This argument expresses a lack of confidence in the competence of an administrative body to adjudicate a claim for compensatory damages. The Legislature does not share this lack of confidence; it has conferred express authority on the State Personnel Board to award compensatory damages for discrimination in the workplace. (§ 19702, subd. (e).) The Commission itself is explicitly authorized to award compensatory damages for housing discrimination. (See § 12987.) There is no reason to think it is less competent in assessing compensatory damages in the context of employment discrimination—or to think that the Commission is less competent than the State Personnel Board to tackle the problem.

The majority also claim that to allow the Commission to award compensatory damages would undermine the ability of the Commission to function efficiently. If it were to award compensatory damages, instead of speedy and informal hearings, it is argued, there would be the expense and delay of factfinding sessions which would resemble proceedings in traditional lawsuits. The majority conclude that such lengthy, complex hearings are better left to the courts, in private civil actions brought against the employer.

In many cases, including this one, the only remedy that will be effective to make the victim whole and to deter future misconduct is a compensatory damage award. If we conclude that such an award can only be had in the judicial forum, we frustrate the legislative goal of providing administrative relief for the problem. Such a rule would encourage claimants to bypass administrative relief, or to treat it simply as a matter of form. If the claimant treats the administrative process as a matter of form, so will the employer and the conference and conciliation goals of the Act would be frustrated.

Further, more cases would be brought to court, rather than resolved expeditiously in a less expensive forum, as was the intent of the Act. And only those who can afford to pay for counsel could go to court, while the less affluent would be confined to a forum which cannot afford them full compensation. Finally, it is not normally the function of this court to determine how an administrative agency can operate most efficiently; the Commission has determined that it can operate efficiently in this arena, and it is free to abandon the effort if it proves unwieldy or unprofitable.

The majority maintain that to allow the Commission to award compensatory damages would be inconsistent with the purpose of the Act to encourage prompt, inexpensive, and efficient disposition of claims. But a concern with moving the cases along must coexist with a commitment to providing an effective remedy. There is a persistent and prevalent social problem of sexual harassment and discrimination in the workplace. (See, e.g., Women Lawyers and the Practice of Law in California, The Women in Law Committee, State Bar of California (1989) [finding that nearly half of survey respondents had experienced sexual harassment on the job; 88 percent perceived subtle, pervasive gender bias within the profession].) We are often taxed with being too litigious a society; one alternative to this state of affairs is to allow administrative remedies to function effectively. This the majority refuse to do.

Kennard, J., concurred.