TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-1104 |
| of | : | |
| | : | April 1, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE COMMISSION ON THE STATUS OF WOMEN has requested an opinion on the following questions:

1.      May the Commission on the Status of Women establish a non-profit organization to raise funds for the commission's activities?

2.      May the Commission on the Status of Women engage in direct fund raising activities?

3.      Are any limitations placed upon the receipt of gifts by the Commission on the Status of Women?

CONCLUSIONS

1.      The Commission on the Status of Women may not establish a non-profit organization to raise funds for the commission's activities.

2.      The Commission on the Status of Women may engage in direct fund raising activities to the extent the activities are necessary, desirable, or proper to carry out the commission's statutory purposes.

3.      All gifts of real or personal property, except unconditional gifts of money, received by the Commission on the Status of Women must be approved by the Director of Finance.

ANALYSIS

The Commission on the Status of Women ("Commission") was created by the Legislature (Gov. Code, §§ 8240-8246)[1] for the overall purpose of "developing recommendations which will enable women to make the maximum contribution to society . . . ." (§ 8240.) Toward that end, the Commission is directed to conduct studies, act as an information center on the status of women, and report its findings to the Legislature. Section 8245 provides as follows:

"(a) The Commission shall study the following:

"(1) Women's educational and employment problems, needs, and opportunities.

"(2) State laws in regard to the civil and political rights of women, including pensions, tax requirements, property rights, marriage and dissolution of marriage provisions, and similar matters.

"(3) The effect of social attitudes and pressures and economic considerations in shaping the roles to be assumed by women in the society.

"(4) Any laws, practices, or conditions concerning or affecting women which impose special limitations or burdens upon them or upon society, or which limit or tend to limit opportunities available to women.

"(b) The commission shall act as an information center on the status of women and women's educational, employment, and other related needs.

"(c) The commission shall recommend, develop, prepare, or coordinate materials, projects, or other activities, and shall give technical and consultative advice to public or private groups or persons concerned with any of the following:

"(1) Preventing or minimizing problems brought about by the changing roles and responsibilities of women.

"(2) Developing programs to encourage and enable women to be fully contributing members of society.

"(d) A prime function of the commission shall be to encourage women's organizations and other groups to institute local self-help activities designed to meet women's educational, employment, and related needs. The commission shall make reports on its activities, findings, and recommendations to the Legislature from time to time, but not less often than every odd-numbered year."

Section 8244 describes the powers and authority of the Commission as follows:

"The commission shall have the powers and authority necessary to carry out the duties imposed upon it by this chapter [§§ 8240-8246] including, but not limited to, the following:

---

[1]All references hereafter to the Government Code are by section number only.

"(a)  To employ such administrative, technical and other personnel as may be necessary for the performance of its powers and duties.

"(b)  To hold hearings, make and sign any agreements and to do or perform any acts which may be necessary, desirable, or proper to carry out the purposes of this chapter.

"(c)  To cooperate with, and secure the cooperation of, any department, division, board, bureau, commission, or other agency of the state to facilitate it properly to carry out its powers and duties hereunder.

"(d)  To appoint advisers or advisory committees from time to time when the commission determines that the experience or expertise of such advisers or advisory committees is needed for projects of the commission.  Section 11009 is applicable to advisers or advisory committees.

"(e)  To accept any federal funds granted, by act of Congress or by executive order, for all or any of the purposes of this chapter.

"(f)  To accept any gifts, donations, grants, or bequests for all or any of the purposes of this chapter."[2]

Section 8246 specifically provides in part:

"(a)  The commission is expressly authorized to inform the Legislature of its position on any legislative proposal pending before the Legislature and to urge the introduction of legislative proposals.

"(b)  The commission is expressly authorized to state its position and viewpoint on issues developed in the performance of its duties and responsibilities as specified in this chapter."

The Commission consists of 17 appointed members.  These include three members of the California Senate, three members of the California Assembly, the Superintendent of Public Instruction, the Chief of the Division of Industrial Welfare in the Department of Industrial Relations, and nine public members.  (§ 8241.)  Each member of the Commission is entitled to receive his or her actual necessary traveling expenses while on official business of the Commission.  (§ 8242.)

The Commission is considering ways of augmenting financial support for its programs and activities and acquiring funds for new projects which it considers important to the fulfillment of its statutory purposes.  In this connection, we are asked to determine whether the Commission may create a non-profit organization to raise funds for its activities. We are also asked to determine whether and to what extent the Commission may engage in direct fund raising on its own behalf.  Finally, the Commission inquires concerning the extent of its ability to accept unsolicited donations in support of its programs.

---

[2]Section 11009 states:

"Except as otherwise expressly provided by law, the members of State boards and commissions shall serve without compensation, but shall be allowed necessary expenses incurred in the performance of duty."

1.	Establishing A Non-Profit Organization

We observe initially that the Commission's enabling law contains no provision which specifically authorizes it to create a non-profit organization. The only expressly authorized means by which the Commission may secure funding in addition to its state budget allotment is its power to accept gifts, grants, and other contributions pursuant to section 8244, subdivisions (e) and (f).

Does section 8244, however, by use of its general terms permit the Commission to create a non-profit organization for the purpose of funding its projects? Subdivision (b) empowers the Commission "to do or perform any acts which may be necessary, desirable, or proper." We conclude that this broad general grant of power does not include the authority to establish a separate legal entity such as a non-profit organization.

In interpreting the language of section 8244, we may rely on several well established principles of statutory interpretation. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same object must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Commission* (1987) 43 Cal.3d 1379, 1387.) "[W]hen a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope." (*Moore* v. *California State Board of Accounting* (1992) 2 Cal.4th 999, 1011-1012.) "[A] court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list." (*Id*., at p. 1012.) "`"[I]f the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage."'" (*Peralta Community College District* v. *Fair Employment & Housing Commission* (1990) 52 Cal.3d 40, 50.)

Applying these principles of construction to the language of section 8244, we find that the phrase "do or perform any acts which may be necessary, desirable, or proper to carry out the purposes of this chapter" may not be interpreted so broadly as to render the remainder of the statute surplusage. If the phrase were construed to authorize the creation of other legal entities, the particular grants of power contained in section 8244 would be unnecessary. For example, the Commission is specifically authorized "[t]o appoint advisers or advisory committees." (§ 8244, subd. (d).) What would be the purpose of such an express grant of power if the Commission's authority under subdivision (b) authorized the creation of a non-profit organization, a wholly separate legal entity?

Moreover, members of the Commission are subject to numerous state laws, such as the Public Records Act (§§ 6250-6268), the Bagley-Keene Open Meeting Act (§§ 11120-11131), and the Political Reform Act of 1974 (§§ 81000-91015). We do not believe that the general language contained in subdivision (b) of section 8244 was intended to allow the creation of a legal entity whose board of directors would not be directly controlled by such legislative enactments.

Of course, the Commission is not prohibited from accepting gifts, donations, or grants from non-profit organizations, among other sources. Indeed, the Legislature has recognized that a Commission member could conceivably be an officer of such a non-profit organization. (See §§ 1091, subd. (b)(1); 1091.5, subd. (a)(8).)

Finding no statutory basis for the exercise of the authority in question, we conclude that the Commission may not establish a non-profit organization to raise funds for the Commission's activities.

2. Direct Fund Raising Activities

We next consider whether the Commission itself may engage in direct fund raising activities. We conclude that such activities would be permissible if necessary, desirable, or proper to carry out the Commission's statutory goals.

Unlike the creation of a non-profit organization, we view direct fund raising by the Commission as coming within the "necessary, desirable, or proper" terms of section 8244, subdivision (b). A separate legal entity is not being established that would be outside direct legislative control. Rather, the Commission itself would be performing activities which it considered to be necessary, desirable, or proper.

Clearly, the Legislature has contemplated that the Commission's annual budgets might not be sufficient for the Commission to carry out all of its statutory duties. Not only is the receipt of federal grants specifically authorized (§ 8244, subd. (e)), so also is the receipt of "any gifts, donations, grants, or bequests" (§ 8244, subd. (f)). We believe such legislative grant of authority in conjunction with the express power to "perform any acts which may be necessary, desirable, or proper to carry out the purposes of [sections 8240-8246]" (§ 8244, subd. (b)) fully supports direct fund raising activities by the Commission itself.

In answer to the second question, therefore, we conclude that the Commission may engage in direct fund raising activities to the extent the activities are necessary, desirable, or proper to carry out the Commission's statutory purposes.

3. Limitations On Receiving Gifts

The final inquiry is whether any statutory limitations restrict the Commission's acceptance of gifts and donations to suppport its activities. As previously noted, the Commission is specifically authorized to "accept any gifts, donations, grants, or bequests for all or any of the purposes of this chapter." (§ 8244, subd. (f).) However, the receipt of such gifts would be subject to the terms of section 11005, which states in pertinent part:

"Unless the Legislature specifically provides that approval is not required, every gift or dedication to the State of personal property, or every gift to the State of real property in fee or in any lesser estate or interest, shall be approved by the Director of Finance. . . ."[3]

In addition, with specific regard to gifts of money, section 16302 provides in part:

"Whenever any person donates any money to the State, the Treasurer shall receive it, upon the receipt of a certificate from the Controller. If the donor, at the

---

[3]The standard to be applied by the Director of Finance in exercising his discretion is as follows:

"The Director of Finance may accept on behalf of the State any gift of real or personal property whenever he deems such gift and the terms and conditions thereof to be in the best interest of the State." (§ 11005.1.)

time of making the donation, files with the Controller a written designation of the fund or appropriation he desires to benefit thereby, his donation shall be credited accordingly.  If such a designation is not made, the donation shall be credited to the State School Fund."

Under section 11005, the "acceptance of gifts of money would be subject to the approval of the Director of Finance, only insofar as conditional gifts of money are involved." (71 Ops.Cal.Atty.Gen. 121, 126 (1988).)  When a person merely designates a particular fund to be credited with his or her donation, the monetary gift is not thereby rendered "conditional" within the meaning of section 11005.  (*Ibid*.)

Accordingly, we conclude that all gifts of real or personal property, except unconditional gifts of money, received by the Commission require the approval of the Director of Finance.

* * * * *