[No. C023517. Third Dist. Oct. 31, 1997.]

R. L. MANAGEMENT COMPANY, Plaintiff and Appellant, v.
THOMAS P. NAGEL, as Director, etc., et al., Defendants and
Respondents.

## COUNSEL

Faustman, Carlton, DiSante & Freudenberger, David F. Faustman, Marie D. DiSante and Ronna S. Reed for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Lawrence K. Keethe and John D. Schell, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

BLEASE, Acting P. J.—This is an appeal in an action seeking to recover alleged erroneous employer tax contributions to the unemployment insurance trust fund. Resolution of the claim invokes the technical vocabulary of the Unemployment Insurance Code (UI),[1] and we necessarily advert to its pertinent provisions from the outset.

The plaintiff, R. L. Management Company (Red Lion), operated hotels as distinct "employing units." That term means "any individual or type of organization that has in its employ one or more individuals performing services for it within this state . . . ." (§ 135.) As a consequence of reporting its multiple employing units separately, for several years the Red Lion enterprises paid more in contributions than would have been required if all the enterprises had been treated as a single employing unit.[2] (§ 131.) In November 1990 Red Lion asked the defendant Employment Development Department (EDD) to consolidate the employing units. EDD did so and adjusted the contribution rate in favor of Red Lion, but only as of 1990. Red Lion filed this action to recover contributions made by the Red Lion enterprises in excess of those required for a single employing unit for 1988 and 1989.

Red Lion contends that the trial court erred in failing to compel repayment of these amounts because they are within the three-year period of the general statute of limitations for filing a claim for refund of unemployment insurance overpayments. (§ 1178.) EDD contends the trial court correctly determined, under sections 1034 and 1036, that the amounts are not subject to repayment because the 1989 and 1988 annual rating periods (§ 903) had expired.

Section 1034 provides that the contribution rate furnished the employer in the annual statement of charges to the employer's account (§ 1033) is "final" unless challenged within 120 days of mailing. There is one exception by which the EDD, on its initiative, may make an adjustment under section 1036 "[p]rior to the expiration of the rating period . . . ."

EDD has the more persuasive argument and we will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

In 1985 Red Lion acquired several existing hotel enterprises, two hotel properties under construction, and a hotel supply company. EDD maintains a

---

[1] References to a section are to the Unemployment Insurance Code unless otherwise stated.

[2] Contributions are computed on the basis of wages paid to employees. (§ 976.) The rate for each employing unit is graduated according to the ratio of previous contributions made to unemployment benefits paid. (§§ 977, 1025-1037.)

separate unemployment insurance account for each employing unit. (See §§ 675, 1026.) Certain of Red Lion's acquisitions had existing accounts. In some instances Red Lion continued to use the existing accounts, in others Red Lion obtained new accounts. By late 1990 Red Lion employed 12 different accounts.

In November 1990 Red Lion wrote a letter to EDD requesting that the accounts be consolidated to a single account. In March 1991, after an audit, EDD informed Red Lion by letter that it had determined the business enterprises are one employing unit under section 135.2.[3] The letter states that because Red Lion had managed the hotels involved in all 12 accounts since 1987 the reserve accounts would be transferred to a single employing unit account effective January 1, 1991, but that no earlier adjustment of the contribution rate was permitted under section 1036 and title 22 of California Code of Regulations, section 1036-2 (hereafter Regulation 1036-2; fn. 7, *post*).

In July 1991, EDD relented and announced that it would allow an adjustment, lowering the contribution rate for the 1990 rating period since Red Lion had filed its request during that rating period and EDD was estopped by its delay in ruling on the adjustment.

In November 1991 Red Lion requested that the same treatment be accorded for the 1988 and 1989 rating periods. EDD refused.

Red Lion petitioned for administrative review under section 1222. The Unemployment Insurance Appeals Board upheld the refusal.

Red Lion filed this action. Eventually, Red Lion moved for summary judgment on the ground that, on the basis of undisputed facts, it was entitled to a refund of the $374,890.04, the difference between the amount due based on contributions to the separate accounts in 1988 and 1989 and the amount due by aggregating the contributions as required by treating Red Lion as one employing unit in those years. EDD opposed the motion. The trial court ruled in favor of EDD on the ground the case was governed by sections 1034 and 1036.

This appeal followed.

---

[3]Section 135.2, in pertinent part is as follows.

"(a) If two or more business enterprises are united by factors of control, operation, and use, the director may determine that the business enterprises are one employing unit."

## DISCUSSION

█ Red Lion contends the limitations period for making its claim is three years as provided by sections 1177 and 1178.[4] EDD replies that these sections do not apply because when the contribution rate shown on the annual account statement has become "final" under sections 1034[5] and 1036[6] the employer is precluded from establishing an "amount of contributions . . . has been erroneously or illegally collected" within the meaning of section 1177.

### I

Red Lion claims the finality provisions of sections 1034 and 1036 should not be read to affect the three-year statute of limitations of sections 1177 and 1178.

The question is one of statutory construction. █ In choosing between alternative readings of a statute, we ordinarily defer to the choice of the

---

[4]Section 1177 is as follows.

"Except as provided by subdivision (b) of Section 1178, if the director determines that any amount of contributions, penalty or interest has been erroneously or illegally collected he shall set forth on the records of the department the amount collected in excess of the amount legally due and the name of the employing unit or other person by whom it was paid and shall refund the amount to the employing unit or other person by whom it was paid if the amount does not include refundable worker contributions. If refundable worker contributions are involved and a claim has not already been filed the director shall give notice to such employing unit or other person of such amount. The excess amount shall be credited on any amounts then due from or accrued against the employing unit and the balance shall be refunded to the employing unit or its successor, administrators or executors."

Section 1178, subdivision (b), in pertinent part, is as follows.

"(b) No refund shall be made or credit allowed unless a claim therefor is filed with the director within three years from the last day of the calendar month following the close of the calendar quarter for which the overpayment was made . . . ."

[5]Section 1034, in pertinent part is as follows.

"(a) The employer, within 60 days after the date of mailing of any statement of charges or credits and charges to the reserve account, or within an additional period not exceeding 60 days which may for good cause be granted by the director, may file with the director a written protest on any item shown thereon. The protest shall set forth the specific grounds on which it is made. No protest may be made on the ground that a claimant was ineligible for a benefit payment where the employer was notified as required by this division and any authorized regulation of the filing of a claim for the benefits or of a determination of the claimant's eligibility therefor and the employer failed to file a timely appeal on the benefit claim, or a final decision of an administrative law judge or of the appeals board affirmed the payment of the benefits. Except as to corrections made by the director as provided in Section 1036, the contribution rate and other items shown on any such statement of charges or statement of account shall be final unless a protest is filed within the time prescribed in this section."

[6]Section 1036, in pertinent part, is as follows.

"(a) Prior to the expiration of the rating period to which a statement relates, the director shall give notice, pursuant to Section 1206, to the employer of the correction of any error which the director finds in any statement of account or statement of charges."

administrative agency charged with administering the statutory scheme. (See, e.g., *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 92-93 [130 Cal.Rptr. 321, 550 P.2d 593].) The degree of deference is highest in the case where the administrative agency has embodied its construction of the statute in a regulation. (See, e.g., *ibid.*)

■ On its face, Regulation 1036-2[7] supports EDD's construction of the statutes on which it relies. It provides that in the case of one employer using multiple accounts "[t]he contribution rates for rating periods which have expired are final."

Red Lion argues that Regulation 1036-2 applies only against EDD in the case in which it desires to *increase* the contribution rate. It relies on a comment which EDD circulated with the proposed regulation in 1960, which states: "The California Supreme Court has held in *Northrop Aircraft, Inc. v. C.E.S.A.* (1948) 32 Cal.2d 872, 198 P.2d 898, that corrections of an employer's contribution rate can be made only where the employer is given notice by the department of the correction within the rating period affected. In accordance with this court's decision, the proposed regulation recognizes that contribution rates are final where the rating period has expired, but provides for combination of two or more accounts for the same employer and correction of the contribution rate for any rating period which has not expired. As to those rating periods which have expired, contributions shall be paid at the rate which has become final and is applicable, and any assessment of contributions with respect to expired rating periods would be at the rate so established."

These remarks do not show that the regulation, which contains no words of limitation, is meant to apply only against EDD. In the circumstance in which the rating period has expired the 120-day period for protest of the annual contribution statement under section 1034 also would have expired. As *Northrop* notes, the ancestral provisions from which section 1034 and 1036 are derived are paired. The latter effects finality against changes in the contribution rate adverse to the employer; the former ordinarily has the same

---

[7]The regulation is as follows.

"If an employer has reported wages and paid contributions under two or more accounts with separate contribution rates, the department shall combine the accounts, compute the corrected contribution rate, and give notice of the correction to the employer, pursuant to Section 1036 of the code, prior to the expiration of the rating period to which the corrected contribution rate applies. The contribution rates for rating periods which have expired are final. If contributions are due with respect to additional unreported wages for rating periods which have expired, the contributions shall be paid at the rate applicable to the expired rating period. No refund, credit, or assessment with respect to wages previously reported for the expired rating periods shall be based solely on the employer's use of two or more accounts with separate contribution rates."

effect against favorable changes at the instance of the employer. "[Section 1034] was undoubtedly provided for the purpose of concluding statements contained in the notice which might be adverse to the employer's interest, for example a statement which, if corrected, would decrease the [contribution] rate." (*Northrop Aircraft, Inc.* v. *Cal. Emp. etc. Com.* (1948) 32 Cal.2d 872, 877 [198 P.2d 898].)

The recognition in the comment that the expiration of the rating period would bar EDD from correcting the contribution rate under section 1036, as explained in *Northrop,* does not suggest that the finality provision in the regulation is only to be applied against EDD.

Of greater importance, the reading advanced by Red Lion is belied by the last sentence of the regulation: "No refund, credit, or assessment with respect to wages previously reported for the expired rating periods shall be based solely on the employer's use of two or more accounts with separate contribution rates." This provides for finality both as to assessments, charges in favor of EDD predicated on underpayments (see §§ 1126-1142), and as to refunds or credits in favor of the employer predicated on overpayments.

Since the regulation manifests the construction of the statutes on which the judgment in favor of EDD rests, we will uphold the judgment absent a persuasive showing that this construction conflicts with the statutory scheme.

## II

Red Lion argues that the regulation conflicts with the statutory scheme because the general overpayment statutes (§§ 1177 and 1178) prescribe a longer, three-year period of limitations.

This argument begs the question—whether the general overpayment provisions apply to a change in the contribution rate after the periods provided by sections 1034 and 1036 have passed without action by EDD to correct the rate.

The chief difficulty with Red Lion's argument is that it gives no effect to the finality provision of section 1034. Red Lion submits that a contribution rate is final under section 1034 unless it is erroneous.[8] The argument deprives section 1034 of any meaning; the rate is never final by reason of

---

[8]Red Lion also argues that EDD cannot rely upon section 1034 because it failed to offer section 1034 as a justification for denial of the overpayment claim in the administrative proceeding. Red Lion asserts, without explanation or citation of authority, that this somehow

section 1034 because it is always subject to revision within the period provided by another statute of limitations.

That cannot be. We must give effect to the finality provision of section 1034 unless to do so would entail an absurdity or unless it is overridden by a contrary and preeminent provision of law. (See, e.g., *People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].)

III

To overcome EDD's authoritative construction of the statutes Red Lion must demonstrate by statutory analysis one of two possibilities.

A.

The first is that the finality provision of section 1034 has a scope that does not include correction of the contribution rate in these circumstances. We have found no basis on which to ascribe such a limited scope to the provision.[9] Red Lion offers two arguments. Neither is persuasive.

Red Lion's first argument retraces the territory related above, that section 1034 is always final except when there is an error subject to correction under sections 1177 and 1178. We reject that for the reasons given.

Red Lion's remaining argument is that section 1034 has no application when section 1036 is applied. It notes that section 1034 provides that its rule of finality is subject to an exception for corrections made under section 1036. Red Lion suggests this means that once section 1036 has been applied, discussion of section 1034 "becomes irrelevant."

works an estoppel to consideration of legal arguments based on section 1034. There is no such estoppel. (See, e.g., *Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 391, fn. 10 [216 Cal.Rptr. 733, 703 P.2d 73]; *Green* v. *Obledo* (1984) 161 Cal.App.3d 678, fn. 3 [207 Cal.Rptr. 830].)

Moreover, regardless of the failure to raise the argument in the administrative process, we cannot construe statutes in artificial isolation; rather we read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].)

[9]We note that in *Bell-Brook Dairies, Inc.* v. *Bryant* (1950) 35 Cal.2d 404, 406 [218 P.2d 1], the Supreme Court rejected the position of EDD that the ancestral provision from which section 1034 is derived should be narrowly construed as providing a limited remedy "restricted to the correction of mathematical errors in the reserve account."

This does not follow. Section 1034 provides for an exception "as provided in Section 1036 . . . ." But section 1036 provides for correction only "[p]rior to the expiration of the rating period to which a statement relates . . . ." (Italics added.) The correction Red Lion seeks, *after* the expiration of the rating period for the 1988 and 1989 statements, is not with the exception "provided by Section 1036 . . . ."

### B.

The remaining argument for overcoming section 1034 is that its rule of finality is overridden by a superior legislative rule.

Two prospects are offered for consideration; (1) a later enacted statute overrides section 1034, or (2) a statute more narrowly addressed to the problem at hand supersedes section 1034 in the circumstances specified. Red Lion fails to establish either case.

The only candidates proffered as overriding section 1034 are sections 1177 and 1178. There is no tenable claim that sections 1177 and 1178 prevail over 1034 and 1036, as a more recent expression of the legislative will, since all of the pertinent statutes were enacted at the same time.[10]

Nor is there any basis shown to the claim that sections 1177 and 1178 provide exceptions to a more general rule in section 1034.

Sections 1177 and (derivatively) 1178 apply to "any amount of contributions, penalty or interest . . . erroneously or illegally collected . . . ." That embraces matters such as overpaid worker contributions to the disability fund (§ 984), overpaid employer contributions under a correction by EDD within the rating period (referring explicitly to § 1036), mistaken employer payments in excess of the amount required by the prescribed contribution rate, and employer contributions consistent with the prescribed contribution rate but made under a protest that EDD's action is entirely void because there is no coverage under the UI (cf. *North Whittier etc. Citrus Assn.* v. *Bryant* (1954) 126 Cal.App.2d 688 [273 P.2d 271]; see generally, e.g.,

---

[10]Nothing in the history of the statutes supports the view that sections 1177 and 1178 supersede sections 1034 and 1036. The predecessor statutes of sections 1177 and 1178 were first enacted as an amendment to the Unemployment Insurance Act in 1939. (Stats. 1939, ch. 630, § 15.) The predecessors for sections 1034 and 1036 were first enacted as an amendment of that act in 1941 and then repealed and added in 1949. (Stats. 1941, ch. 940, § 2; Stats. 1949, ch. 1441, §§ 1, 14.) Both lines were codified in the same enactment in 1953. (Stats. 1953, ch. 308, §§ 1177, 1178.)

*Parr-Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157, 164-165 [272 P.2d 16]). Each of these is a variety of overpayment potentially subject to the three-year limitations period of sections 1177 and 1178 which does not vitiate the finality of the contribution rate as prescribed in section 1034.

On the other hand, as related, if sections 1177 and 1178 warrant recalculating the contribution rate in the case of a multiple employing unit, no reason is suggested why they would not warrant recalculating the contribution rate for any other claim of error. If anything, section 1034 is the special statute and sections 1177 and 1178 the general statutes.

### C.

Red Lion laments that the result is unjust because the unemployment trust fund retains Red Lion's money, to which the state is not "rightfully entitled." But that is the result whenever a statute of limitations provision is applied within which to contest a contribution. The question of the appropriate limitations period is for the Legislature.

"That the Legislature desired finality of proceedings on the commission's initiative affecting the contribution rate within the rating period to be affected thereby, is reasonable as well as desirable, considering the factors of integration of the act with federal legislation, possible merit ratings under the Federal Revenue Code (26 U.S.C. §§ 1601, 1604), necessity otherwise of revising state and federal income tax reports, costs under war contracts, and other pertinent required audits and reports covering operations. But, regardless of the motivating reason, the language is plain and the intent clear, and neither may be judicially overridden by applying rules of construction applicable only in cases of doubtful meaning.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . And as said in *Grand Central Public Market* v. *United States*, 22 F.Supp. 119, 131, the taxpayer on the one hand has a right to know that in the absence of fraud or deception on his part there is a definitely limited time within which the government may attempt to assess an additional tax, while the government on the other hand has the right to have a definitely limited time within which the taxpayer may successfully ask for a refund. Such limitations are binding on both the taxpayer and the government or taxing body." (*Northrop Aircraft* v. *Cal. Emp. etc. Com.*, *supra*, 32 Cal.2d at pp. 878-879.)

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 28, 1998.