[No. C030478. Third Dist. July 28, 1999.]

SAN RAFAEL ELEMENTARY SCHOOL DISTRICT, Plaintiff and Respondent, v.
STATE BOARD OF EDUCATION, Defendant and Appellant;
LORENE RUSSELL et al., Real Parties in Interest and Appellants.

**COUNSEL**

Michael E. Hersher and Edmundo R. Aguilar for Defendant and Appellant.

Nielsen, Merksamer, Parrinello, Mueller & Naylor, Marguerite Mary Leoni, James R. Parrinello; and Rupert P. Hansen for Real Parties in Interest and Appellants.

McCutchen, Doyle, Brown & Enersen, William Bates III, Joshua A. Bloom, Mark K. deLangis, Natasha Sen; Bergman & Wedner and Richard V. Godino for Plaintiff and Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Paul M. Loya and Janice J. Hein for Education Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Plaintiff and Respondent.

Lozano Smith Smith Woliver & Behrens and Harold M. Freiman for Santa Clara County Office of Education, Santa Clara County Committee on School District Organization, Campbell Union High School District, Los Gatos Union School District, Los Gatos-Saratoga Joint Union High School District, Saratoga Union School District and Union School District as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This case concerns the scope of authority of the State Board of Education (the Board) to review a decision of a local county committee, the Marin County Committee on District Organization (the Committee), regarding the transfer of territory from one school district to another under Education Code sections 35710.5 and 35711.[1]

The Committee disapproved a transfer of territory in Marin County from the San Rafael Elementary School District (San Rafael Elementary) to the Dixie School District (Dixie). The Board rejected the Committee findings, made its own findings supporting a transfer, reversed the Committee decision and directed that the transfer go forward.

San Rafael Elementary filed this action. The trial court granted San Rafael Elementary's petition for a writ of mandate overturning the Board's decision. The trial court concluded the Board had no authority under section 35710.5 to consider de novo the findings made by the Committee as the basis for its decision. This appeal followed.

The Board and the proponents of the transfer, the real parties in interest, contend the trial court erred in construing section 35710.5 to limit the Board's authority to review the Committee decision. The contention of error has merit and we will reverse the judgment.

---

[1]References to a section are to sections of the Education Code unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

On July 10, 1997, a petition to transfer 300 homes from San Rafael Elementary to Dixie was filed with the Marin County Office of Education. The petition requests the transfer on grounds that placement of the territory in Dixie is more appropriate due to considerations of geography and social connection. In particular, it is claimed the transfer would permit children to ride their bicycles to the nearest Dixie elementary school more safely than to the nearest San Rafael Elementary school and would foster long-term social relationships with their neighbors who attend elementary school in Dixie. The petition designates the real parties in interest as the chief petitioners, persons entitled to receive notice of public hearings on the petition (§ 35702) and to appeal an adverse county committee determination to the Board (§ 35710.5).

Both San Rafael Elementary and Dixie opposed the proposed transfer of territory.

On November 5, 1997, the petition was considered by the Committee. It disapproved the petition on grounds the proposed transfer failed to meet three criteria of section 35753, subdivision (a) as follows: subdivision (a)(4), "The reorganization of the district will not promote racial or ethnic discrimination or segregation"; subdivision (a)(6), "The proposed reorganization will not significantly disrupt the educational programs in the proposed districts and districts affected by the proposed reorganization will continue to promote sound education performance in those districts"; and subdivision (a)(9), "The proposed reorganization will not negatively affect the fiscal management or fiscal status of the proposed district or any existing district affected by the proposed reorganization."

The chief petitioners[2] appealed the Committee decision to the Board. At a hearing on May 7, 1998, the Board decided the proposed transfer met all three criteria of section 35753 which the Committee found unmet.[3] The Board reversed the Committee decision and determined the election concerning the transfer of territory would be held within the territory to be transferred.

---

[2]Section 35701 provides: "In any petition to reorganize school districts there shall be designated no more than three of the petitioners as chief petitioners for the purpose of receiving notice of any public hearings to be held on the petition."

[3]No issue is tendered in these proceedings of the sufficiency of the evidence to support the findings of the Board or the contrary findings of the Committee nor whether either abused its discretion in making the findings. Accordingly, we have no occasion to elaborate the basis in the record for the conflicting findings and imply no view thereon.

On June 8, 1998, San Rafael Elementary filed a petition for writ of mandate to command the Board to set aside its decision. The petition contended, inter alia, that under section 35710.5, the Board has no authority to reconsider and overturn the finding of the Committee that the transfer proposal fails to satisfy the criteria of section 35753, subdivision (a).[4]

The trial court granted the writ, reasoning as follows: "Education Code Section 35710.5 provides that a Chief Petitioner may appeal a decision of a County Committee to the State Board, but that such an appeal 'shall be limited to issues of noncompliance with Education Code sections 35705, 35706, 35709, and 35710.' The Court finds that the State Board's review authority is limited to the procedural issues contained in [these Education Code sections]. Nothing in the Education Code indicates that the State Board's review authority also includes a substantive review of the factors set forth in Education Code section 35753. Otherwise, the legislature's insertion of the word 'limited' in Education Code Section 35710.5 would be meaningless, and the statute would include language to the effect that a transfer appeal may be based upon the merits of the underlying petition."

The Board and the chief petitioners appeal from the judgment.

### DISCUSSION

The Board[5] contends the trial court erred in construing section 35710.5 to prohibit its determination de novo that the proposed transfer complies with the criteria listed in section 35753. We agree.

### A.  *The Statutory Text and Context*

" 'One of the common techniques of statutory construction, *besides being always a starting point*, is to read and examine the text of the act and draw inferences concerning meaning from its composition and structure.' (2A Sutherland, Statutory Construction (4th ed. 1973) § 47.01, p. 70; italics added.)" (*Nunez* v. *Superior Court* (1983) 143 Cal.App.3d 476, 480 [191 Cal.Rptr. 893].) We start with the text of section 35710.5, which provides in pertinent part:

"(a) An action by the county committee approving or disapproving a petition pursuant to Section 35709 or 35710 may be appealed to the State

---

[4]San Rafael Elementary's petition also tenders two other claims, that the Board erred (1) in improperly engaging in ex parte communications with the chief petitioners and (2) in determining the territory in which the election on the petition is to be held. The judgment explicitly eschews a resolution of these claims.

[5]Since the Board and the chief petitioners are aligned in interest, we refer to their collective contentions and arguments as made by the Board.

Board of Education by the chief petitioners or one or more affected school districts. The appeal shall be limited to issues of noncompliance with the provisions of Section 35705, 35706, 35709, or 35710. If an appeal is made as to the issue of whether the proposed transfer will adversely affect the racial or ethnic integration of the schools of the districts affected, it shall be made pursuant to Section 35711.

"(b) . . . Within 15 days after the filing of the notice of appeal, the appellant shall file with the county committee a statement of reasons and factual evidence. The county committee shall then, within 15 days of receipt of the statement, send to the State Board of Education the statement and the complete administrative record of the county committee proceedings, including minutes of the oral proceedings.

"(c) Upon receipt of the appeal, the State Board of Education may elect either to review the appeal, or to ratify the county committee's decision by summarily denying review of the appeal. The board may review the appeal either solely on the administrative record or in conjunction with a public hearing. Following the review, the board shall affirm or reverse the action of the county committee, and if the petition will be sent to election, shall determine the territory in which the election is to be held. The board may reverse or modify the action of the county committee in any manner consistent with law."

At issue is the meaning of the second sentence of section 35710.5, subdivision (a), which provides that Board review of a county committee transfer decision is "limited to issues of noncompliance with the provisions of Section . . . 35710." Section 35710 provides that, in a case like this one: "if the county committee finds that the conditions enumerated in paragraph (1) to (10), inclusive, of subdivision (a) of Section 35753 are substantially met, the county committee may approve the petition and, if approved, shall so notify the county superintendent of schools who shall call an election in the territory of the districts as determined by the county committee . . . ."

The parties disagree whether review of an "issue[] of noncompliance" with section 35710 includes de novo review of a committee finding that a condition of section 35753 has not been "substantially met."

San Rafael Elementary claims, and the trial court concluded, that a section 35710.5 appeal is limited to procedural matters, that "noncompliance with the provisions of Section . . . 35710" extends only to the question whether the county committee made a required finding, but not whether the finding meets the criteria of section 35373 that are referenced in section 35710, contained in section 35710.5, subdivision (a).

On the surface, both candidate readings of "noncompliance" are semantically tenable; hence the problem is to resolve an ambiguity. (E.g., *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246] ["An ambiguity arises when language is reasonably susceptible of more than one application to material facts"].)

Before plunging into the trees, we survey the forest. As the Board suggests, it would be odd to limit an appeal to compliance by a county committee with procedures prescribed by sections 35705, 35706, 35709, and 35710. They consist of: (1) time requirements for conducting hearings, giving notices, and rendering a decision, (2) notice requirements of hearings and decisions, and, (3) requirements that findings be made on each of the criteria set forth in section 35753. Compliance with such procedures is a ministerial matter; noncompliance would presumably be rare and subject to correction by traditional mandamus proceedings in the superior court, rather than by resort to the Board, a political body whose authority and expertise pertain to matters of education policy.

The appellate remedies provided by section 35710.5 seem ill-suited for review of procedural noncompliance. The Board is authorized to affirm, reverse, or modify the action of a county committee and, if an election is directed, to determine the territory in which the election will occur (§ 35710.5, subd. (c)). A county committee may approve or disapprove a petition and, if an election is required, as here, determine the territory in which the election will occur. In the view of San Rafael Elementary, Board review is limited to procedural defects and, upon finding a defect, the Board is limited to overturning or accepting the substantive decisions of the county committee. However, under section 35710.5, subdivision (c), the Board's remedial authority also extends to modifying the substantive decision of a county committee, implying that its review is substantive.

The Board's view that "noncompliance" extends to a county committee's findings under section 35753 finds grammatical support nearby, in the third sentence of section 35710.5, subdivision (a): "If an appeal is made as to the issue of whether the proposed transfer will adversely affect the racial or ethnic integration of the schools of the districts affected, it shall be made pursuant to Section 35711."

That issue is the subject of one of the conditions of section 35753, subdivision (a), upon which the county committee must make a finding. The specification in the third sentence that an appeal on the issue of integration is to be pursued under section 35711 is necessary only if the issue would

otherwise be within the appellate purview of the Board under the second sentence of section 35710.5.

Section 35711[6] provides for an appeal to the Board of a "decision made upon such a finding [of adverse impact on integration] . . . ." San Rafael Elementary argues this language supports its reading of a limited scope of review under section 35710.5.[7] It asserts the failure of section 35710.5 to contain an express provision for substantive review implies it is not available under that section. We disagree.

The existence of two statutes providing for an appeal does not advance San Rafael Elementary's position. It derives from the sequence of the enactments in the statutory scheme. Section 35711, which predates the 1990 enactment of section 35710.5,[8] was adopted in 1980 to provide for an appeal of a county committee finding that a reorganization will not promote racial or ethnic discrimination or segregation. (Stats. 1980, ch. 1192, § 3, p. 4015.) At that time county committees played a lesser role in reorganization decisions. A committee could approve or disapprove a petition to transfer territory only if all of the governing boards of the affected school districts consented to the transfer, and then only if the amount of inhabited territory

---

[6]Section 35711 provides as follows.

"Any person questioning the finding of the county committee pursuant to Section 35709 or 35710 that the proposed transfer of territory will not adversely affect the racial or ethnic integration of the schools of the districts affected, may appeal a decision made upon such a finding. The appeal shall be made to the State Board of Education within 30 days. The appeal shall be based upon factual and statistical evidence.

"If the State Board of Education denies the appeal, the decision of the county committee shall stand. If the State Board of Education approves the appeal, it shall review the findings of the county committee at a regular meeting of the board.

"The State Board of Education shall notify the county committee on its decision on the appeal. If the State Board of Education approves the appeal, the county committee shall transmit a copy of the proceedings to the State Board of Education within 30 days after receipt of notice. The State Board of Education shall review the transcript, considering all factors involved. The State Board of Education may reverse, or may affirm, the decision of the county committee, or if it appears that inadequate consideration was given to the effect of the transfer on integration of the schools of the districts affected, it shall direct the county committee to reconsider its decision and for this purpose to hold another hearing."

[7]The trial court also gave this argument as a justification for its decision.

[8]Senate Bill No. 1927, 1989-1990 Regular Session, was the vehicle for the enactment of section 35710.5. (Stats. 1990, ch. 1658, § 6, p. 7908.) An earlier version of Senate Bill No. 1927 contained a review provision which required a determination whether: "the county committee properly followed the procedural requirements set forth in this article, or properly considered the conditions for reorganizations set forth in subdivision (a) of Section 35753 . . . ." (Sen. Amend. to Sen. Bill No. 1927 (1989-1990 Reg. Sess.) May 7, 1990.) In effect, the Board's view is that compliance with section 35710 requires "proper consideration" of the conditions for reorganizations set forth in subdivision (a) of section 35753 and "proper consideration" means a correct determination.

was less than 5 percent of the assessed valuation of the district from which it would be transferred. (Stats. 1980, ch. 1192, § 3, pp. 4014-4015.) As to all other reorganization petitions, the county committee was limited to making recommendations to the Board for its decision. (*Ibid.*)

It is true that section 35711 expressly provides for a substantive review of one of the findings made by a county committee under section 35753, i.e., a finding under subdivision (a)(4) that a reorganization will not promote racial or ethnic discrimination or segregation. However, the singling out of that issue only shows the importance given the impact of interdistrict transfers upon racial or ethnic integration. That is to say, having decided that a finding that a transfer has no detrimental impact on racial or ethnic integration warrants an appeal, the appeal is *perforce* a "substantive" review of that finding.

The manifest difference between an appeal under section 35710.5 and an appeal under section 35711 concerns standing to bring the appeal. Under the latter section an appeal may be taken by "[a]ny person questioning the finding of the county committee," while under section 35710.5 an appeal may be taken only by "the chief petitioners or one or more affected school districts." The broader scope of section 35711 review ensures that the interests of a minority in advancing integration are not silenced by lack of representation among the chief petitioners or on the affected school boards, majoritarian political bodies. There is nothing in this policy which bears on the scope of review afforded by section 35710.5.

Nor do we find an implication that review under section 35710.5 is limited to "procedural" defects by its provision that appeal is "*limited* to issues of noncompliance" with the sections mentioned therein, including section 35710. Since the obligation to make findings under section 35753 is contained in section 35710, the failure to make correct findings may lie within the ambit of the limitation. The trial court opined that the word "limited" would be rendered meaningless if review under section 35710.5 extended to a review of the county committee's section 35753 findings. However, the word "limited" has application to other sections pertaining to the transfer of territory to which it otherwise might reasonably apply, e.g., sections 35700-35703 regarding the sufficiency of the petition to initiate the transfer proceedings. Thus, the term "limited," added in the Senate amendment of Senate Bill No. 1927 on August 6, 1990, is explicable as a restriction on the extent of procedural review afforded under the earlier enactment which

permitted review of "the procedural requirements set forth in this article" (see fn. 8, *ante*).[9]

San Rafael Elementary argues that the ambiguity should be resolved in its favor based upon a policy, manifest in section 35160.1, subdivision (a),[10] to grant local control over education to the greatest extent possible. However, the generalized sentiment in section 35160.1 is of no help in determining how much, if any, flexibility the Legislature has provided under a specific statutory scheme. Section 35160.1 is a clarification of section 35160, which in turn provides flexibility to "act in any manner which is not in conflict with or inconsistent with, or preempted by, any law . . . ." Thus, its application begins *after* the meaning of "law," here section 35710.5, is ascertained.

The Board notes it has authority to promulgate regulations for the implementation of section 35710.5 (§ 35712) and submits that its view of the meaning of section 35710.5 is therefore entitled to some measure of deference.[11] We agree. (See, e.g., *R. L. Management Co.* v. *Nagel* (1997) 58 Cal.App.4th 1285, 1289-1290 [68 Cal.Rptr.2d 801].)

In light of the foregoing considerations of statutory text and context, it appears the ambiguity concerning the meaning of "issues of noncompliance with the provisions of Section . . . 35710" should be resolved in favor of the Board. However, we must first examine the meandering legislative history proffered by the parties to see if it alters our resolution.[12]

[9]Moreover, "limited" may also have an effect in ruling out a decision by the Board to approve a transfer, under section 35753, subdivision (b), notwithstanding the failure of the proposal to meet a criterion of subdivision (a) of that statute.

Section 35753, subdivision (b) is as follows: "(b) The State Board of Education may approve a proposal for the reorganization of school districts if the board determines that it is not practical or possible to apply the criteria of this section literally, and that the circumstances with respect to the proposals provide an exceptional situation sufficient to justify approval of the proposals."

[10]Section 35160.1, subdivision (a) is as follows:

"(a) The Legislature finds and declares that school districts, county boards of education, and county superintendents of schools have diverse needs unique to their individual communities and programs. Moreover, in addressing their needs, common as well as unique, school districts, county boards of education, and county superintendents of schools should have the flexibility to create their own unique solutions."

[11]The Board asks that we take judicial notice of a chart purporting to show, inter alia, the outcome of various appeals in other territory transfer appeals. The motion is denied.

[12]We exclude from examination in the text the legislative history of Senate Bill No. 1258, 1997-1998 Regular Session. It would have amended, inter alia, section 35710.5. It was vetoed by the Governor. The proposed changes to section 35710.5 in the enrolled bill cast no illumination on the issue of ambiguity presented in this case.

## B. *The Legislative History*

The trial court was of the view that the legislative history of section 35710.5, as embodied in Senate Bill No. 1927 in the 1990 legislative session, "reflects that the [L]egislature's purpose was to ensure local control," which, it found, supports San Rafael Elementary's reading of the section. We disagree.

As noted, under the prior law a county committee was largely limited to making recommendations to the Board on reorganization petitions and could only approve or disapprove a petition to transfer small amounts of inhabited territory and only if all of the governing boards of the affected school districts consented to the transfer.

In the form of its introduction Senate Bill No. 1927 would have extended the period for making recommendations to the Board. On March 19, 1990, the bill was significantly amended in the Senate to permit approval by the county committee of a petition to transfer inhabited territory, if no impact on racial discrimination was found, without requiring the approval of the governing boards of the districts involved.

San Rafael Elementary points to the Senate Committee on Education staff analysis of the bill as so amended, which makes the following assertions:

"The third item is a recognition that disputed territory transfers can best be resolved at the local level. The state does not have the staff nor time to investigate the various arguments any better than the county committee's. This would assign to the county committee authority in an area that rightfully should be theirs. The establishment of new districts should be a state issue. The realignment of existing districts should be a locally resolved issue.

"(The Committee may want to recommend an appeal procedure beyond the local level. One possibility is to offer an appeal to the State Board of

However, the Board asks that we look at earlier versions of the bill for an inference of the Legislature's understanding of the scope of review under section 35710.5, citing *Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System Board of Directors* (1993) 6 Cal.4th 821, 832-833 [25 Cal.Rptr.2d 148, 863 P.2d 218]. Assuming there is some utility, however slight, in examining the view of the Legislature concerning the meaning of a statute that is expressed in an enrolled but vetoed bill (see *ibid.*), there is none in examining views in superseded versions of a bill never endorsed by the Legislature. Such matter is in the realm of "legislative tea leaves" (see *Baldwin* v. *County of Tehama* (1994) 31 Cal.App.4th 166, 181 [36 Cal.Rptr.2d 886]), inherently incapable of shedding light on the meaning of an earlier enacted statute. (See generally, e.g., *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52 [276 Cal.Rptr. 114, 801 P.2d 357].)

Education if a new petition which contains 25% of the voters is in opposition to the local action.)"

Obviously, this statutory text and these extrinsic remarks would support a purpose to ensure local control, if no procedure for an appeal to the Board was provided. However, on April 4, 1990, the bill was again amended in the Senate, in keeping with the parenthetical suggestion of the committee staff report, to provide for an appeal to the Board if a protest of the county committee decision was supported by 25 percent of the registered voters in the affected territory.

On May 7, 1990, the bill was again amended in the Senate. This amendment dispensed with the requirement of voter support for an appeal and provided for an appeal if an appointed appeals board found, as explained in footnote 8, *ante*, that the county committee did not follow the procedural requirements and properly consider the conditions for reorganizations set forth in subdivision (a) of section 35753.

The first Assembly amendment of June 27, 1990, simply provided for an unrestricted appeal of right to the Board. The second Assembly amendment of August 6, 1990, provided for an appeal, using for the first time the bulk of the language of section 35710.5 at issue in this case. The fourth Assembly amendment of August 23, 1990, completed the changes to the present language of section 35710.5, adding the third sentence to subdivision (a) of 35710.5: "If an appeal is made as to the issue of whether the proposed transfer will adversely affect the racial or ethnic integration of the schools of the districts affected, it shall be made pursuant to Section 35711."

This history shows an initial purpose to provide for the final disposition of petitions to transfer territory at the local level by the county committee. It was followed by a series of amendments to provide for an appeal to the Board and to refine the language used to describe that appeal right. Nothing in the semantic evolution of the amendments to Senate Bill No. 1927 resolves the ambiguity in section 35710.5 in its appeal language that differs from the implication afforded from the text and context of the statutes, as discussed above. There is no manifestation of a "purpose to ensure local control" in an amendment process that cuts back on an initial proposal for complete local control by providing a right of appeal.

San Rafael Elementary relies on one shard in the "legislative history" as weighing in its favor. It points to extrinsic matter, three analyses by the Department of Finance (Finance) of Senate Bill No. 1927 provided at some of the junctures in the amendment process. The first analysis is contained in

a letter to the author concerning the bill as amended on May 7, 1990. There, Finance suggested the right of appeal should be expanded so that anyone questioning the finding of the county committee would have standing to appeal. The second analysis, also in a letter to the author, concerns the bill as amended on August 6, 1990. It describes the intervening amendments as insignificant and contains the following assertions:

"Under current law, any person questioning the findings of the county committee with regard to whether a territory transfer would affect the racial or ethnic integration of the district may appeal the county committee's decision to the [Board]. SB 1927 would provide that appeals shall be limited to specified procedural issues for school district territory transfer as well as initiated by one of the chief petitioners or a district involved in the transfer.

"[Finance] opposes this bill unless amended to allow appeals to be made regarding substantive issues, i.e., those issues addressed in Section 35753 as proposed in and SB 1927 such as ethnic integration, fiscal condition of the district and property values. [The Department of Education], a sponsor of the bill, has indicated that their intent was to include issues addressed in Section 35753.

"Furthermore, if this change is made to the bill, Section 35711 of the Education Code should be deleted to avoid inconsistency in the appeals procedure that regards racial or ethnic integration of the district."·

The third analysis is a poor quality photocopy that does not contain an addressee. It discusses the bill after the amendment of August 23, 1990, and recommends that the bill should be signed. As best we can make out, it contains the following paragraph. "Under current law, any person questioning the findings of the county committee with regard to whether a territory transfer would affect the racial or ethnic integration of the district may appeal the county committee's decision to the [Board]. SB 1927 would provide that appeals on specified procedural issues may also be taken by one of the chief petitioners or a district involved in the transfer."

San Rafael Elementary suggests these letters show the Legislature never intended for the Board "to be able to second-guess county committees under section 35710.5." The suggestion is unpersuasive.

The letters show something about the opinion of someone in Finance about the meaning of some of the language in the pending bill in issue, i.e., the first two sentences of section 35710.5, considered in isolation, without the third sentence. That would be of some interest for purposes of showing

an ambiguity, i.e., showing a potential candidate meaning for that language. However, the letters are of no weight in resolving the ambiguity in this case.

The second letter suggests the Department of Education may have had the opposite view of the effect of the language in issue.[13] As the Board notes, the third letter provides no clear indication why Finance changed its position; did it give up on review of other issues addressed in section 35753, or was it persuaded that, under the bill as amended in the interim, those issues would be subject to review for noncompliance with provisions of section 35710? More importantly, the letters are of vanishingly small value because there is no indication they were generally available to members of the Legislature, much less actually known to them. (Cf., e.g., *In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739-740 [199 Cal.Rptr. 697]; *J.A. Jones Construction Co.* v. *Superior Court* (1994) 27 Cal.App.4th 1568, 1577 [33 Cal.Rptr.2d 206].)

In sum, we see nothing in the legislative history which overcomes our resolution of the ambiguity concerning the meaning of "issues of noncompliance with the provisions of Section . . . 35710" in favor of the Board. We conclude that the phrase authorizes the Board to conduct a de novo review of the issue whether the facts supporting a transfer satisfy the conditions of section 35753.

### Disposition

The judgment is reversed. Appellants shall recover their costs of this appeal.

Davis, J., and Morrison, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 20, 1999.

---

[13]Somewhat cryptic support for this reading is found in the following passage in a letter sent by the legislative counsel to Assembly Member Richard Mountjoy, with a copy to the bill's author, apparently during the during the pendency of the bill:

"Section 35710.5, as added by S.B. 1927, would authorize any of the three or fewer chief petitioners designated in the petition to transfer territory, or any affected school district, to appeal to the State Board of Education an action by the county committee approving or disapproving a petition pursuant to Section 35709 or 35710 . . . . The grounds for that appeal would be limited to the issue of the county committee's noncompliance with the requirements of those sections, as amended to incorporate the conditions enumerated in subdivision (a) of Section 35753, other than the condition relating to racial or ethnic integration . . . ." As a source bearing on legislative intent, this letter suffers from the same essential deficiency as those discussed in the text.