BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE BONNIE GARCIA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
In light of a school district's broad authority to conduct its programs and activities, may a school district assess a fee upon providers of deferred compensation plans to cover its costs of administering the plans for district employees?
 CONCLUSION
Even though a school district has broad authority to conduct its programs and activities, it may not assess a fee upon providers of deferred compensation plans to cover its costs of administering the plans for district employees.
 ANALYSIS
In 57 Ops.Cal.Atty.Gen. 166 (1974), we concluded that a school district may not assess a fee upon providers of deferred compensation plans to cover its costs of administering the plans for district employees. We are now asked to revisit that question in light of the flexibility given to school districts by the Legislature, effective January 1, 1976, in operating their programs and conducting their activities. We conclude that even with its enhanced statutory authority, a school district remains barred from imposing a fee upon providers of deferred compensation plans to cover the costs of administering the plans for district employees.
In our 1974 opinion, we found that under former Education Code section 13009[1], a school district was not authorized to charge a fee to cover its "costs of administering" a deferred compensation program for district employees. (57 Ops.Cal.Atty.Gen., supra, at p. 174.) Former section 13009 provided:
 "The governing board of each school district when drawing an order for the salary payment due to employees of the district shall, without charge, reduce the order by the amount which it has been requested in a revocable written authorization by the employee to deduct for any or all of the following purposes: participating in a deferred compensation program offered by the school district which provides for investments in corporate stocks, bonds, securities, mutual funds, or annuities, except as prohibited by the Constitution, or paying premiums on any policy or certificate of group life insurance for the benefit of the employee or for group disability insurance or both, for the benefit of the employee or his dependents issued by an admitted insurer on a form of policy or certificate approved by the Insurance Commissioner . . . ." (Italics added.)
We contrasted former section 13009 with former Government Code section1156.1, which expressly allowed the imposition of charges to cover administrative costs in the state employee payroll deduction program. We observed:
 "This statutory allocation, to the insurance providers, of the costs of administering such programs for state employees stands in contrast to Education Code section 13009, which requires similar payroll reductions to be made `without charge' by the district, and reflects a distinct legislative determination that school districts must themselves bear the administrative costs of providing tax-sheltered annuities to their employees." (57 Ops.Cal.Atty.Gen., supra, at p. 174)
We then concluded:
 "Accordingly, while it is permissible for a school district to employ a bank in aid of its processing payroll reductions and premium payments for employee tax-sheltered annuities, the cost of such processing must be borne by the district itself, and may not be shifted, by contract or otherwise, to either the insurer or the employee." (Id. at p. 175.)
Our 1974 opinion would cover the costs of the administrative services necessary in operating a deferred compensation program by a school district such as (1) establishing comprehensive administration and compliance procedures, (2) providing forms and documents for use with the plans, (3) maintaining forms, documents, and procedures as federal and state regulatory changes occur in the future, (4) working directly with providers and participants to ensure that the current agreements, forms, and procedures meeting regulatory changes are in use, (5) establishing maximum annual deferral limits for all plans, including all catch-up options, (6) monitoring on a monthly basis employee contributions with respect to maximum annual deferral limits, (7) receiving for approval all requests for distributions (retirement, hardship, in-service, loans, and (8) establishing and overseeing employee education programs, while ensuring compliance with all federal and state laws and regulations.
Since our 1974 opinion, the Legislature has given broad powers and flexibility to school districts in conducting their programs and activities. Section 35160 states:
 "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."
Section 35160.1 provides:
 "(a) The Legislature finds and declares that school districts, county boards of education, and county superintendents of schools have diverse needs unique to their individual communities and programs. Moreover, in addressing their needs, common as well as unique, school districts . . . should have the flexibility to create their own unique solutions.
 "(b) In enacting Section 35160, it is the intent of the Legislature to give school districts, county boards of education, and county superintendents of schools broad authority to carry on activities and programs, including the expenditure of funds for programs and activities which, in the determination of the governing board of the school district . . . are necessary or desirable in meeting their needs and are not inconsistent with the purposes for which the funds were appropriated. It is the intent of the Legislature that Section 35160 be liberally construed to effect this objective.
 "(c) The Legislature further declares that the adoption of this section is a clarification of existing law under Section 35160."
Do the terms of sections 35160 and 35160.1 affect the conclusion reached in our 1974 opinion?
We have previously observed with respect to section 35160 that "while the powers of a school district are broad, they may not be exercised in a manner that is in conflict, inconsistent, or preempted by state law." (83 Ops.Cal.Atty.Gen. 40, 41 (2000).) As noted by the Supreme Court, "the flexibility provided by section 35160 is not without limits." (Hartzell v. Connell (1984) 35 Cal.3d 899, 915.) In San Rafael Elementary School Dist. v. State Board of Education (1999) 73 Cal.App.4th 1018, 1027, the court noted:
 ". . .The generalized sentiment in section 35160.1 is of no help in determining how much, if any, flexibility the Legislature has provided under a specific statutory scheme. Section 35160.1 is a clarification of section 35160, which in turn provides flexibility to `act in any manner which is not in conflict with or inconsistent with, or preempted by, any law. . . .' Thus, its application begins after the meaning of `law'. . . is ascertained."
Accordingly, sections 35160 and 35160.1 require our determination of whether a state law precludes a school district from assessing a fee on providers of deferred compensation plans. (See Dawson v. East Side Union High School Dist. (1994) 28 Cal.App.4th 998, 1017-1019; Howard Jarvis Taxpayers Assn. v. Whittier Union High School Dist. (1993)15 Cal.App.4th 730, 734-735; California School Employees Assn. v. Del Norte County Unified Sch. Dist. (1992) 2 Cal.App.4th 1396, 1404; 84 Ops.Cal.Atty.Gen. 5, 8 (2001).)
While former section 13009 has been repealed, its replacement provides similar language. Section 44041 states:
 "The governing board of each school district when drawing an order for the salary payment due to employees of the district shall, without charge, reduce the order by the amount which it has been requested in a revocable written authorization by the employee to deduct for any or all of the following purposes: participating in a deferred compensation program offered by the school district which provides for investments in corporate stocks, bonds, securities, mutual funds, or annuities, except as prohibited by the Constitution, or paying premiums on any policy or certificate of group life insurance for the benefit of the employee or for group disability insurance, or legal expense insurance, or any of them, for the benefit of the employee or his dependents issued by an admitted insurer on a form of policy or certificate approved by the Insurance Commissioner . . . ." (Italics added.)
The critical phrase "without charge" remains part of the authorizing legislation for school districts, in contrast to the current authorizing legislation for the state employee payroll deduction program set forth in Government Code section 1153:
 "The Controller shall provide for the administration of payroll deductions . . . .
"In determining these programs the Controller shall:
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(d) Determine the cost of performing the requested service and collect that cost from the organization, entity, or individual requesting or authorizing the service . . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The Legislature could have omitted the phrase "without charge" when it enacted section 44041. However, it did not do so. Our interpretation of former 13009 is applicable to the terms of section 44041. "[T]he failure of the Legislature to amend the statute following publication of the Attorney General's opinion supports an inference that the legislative intent therein was correctly construed. . . ." (Sonoma County Board of Education v. Public Employment Relations Board (1980) 102 Cal.App.3d 689,700.)
Significantly, when the Legislature has chosen to allow school districts to impose a charge in connection with employee payroll deductions, it has done so expressly. For example, section 45060 provides:
 ". . . [T]he governing board of each school district, when drawing an order for the salary payment due to a certificated employee of the district, shall with or without charge reduce the order by the amount which it has been requested in a revocable written authorization by the employee to deduct for the purpose of paying the dues of the employee for membership in any . . . professional organization . . . ." (Italics added.)
Hence, we find that the rationale and conclusion of our 1974 opinion remain applicable to the particular charges under consideration here. The broad powers set forth in section 35160 and 35160.1 do not extend to adopting the administrative charges in question because to do so would be "inconsistent" with the terms of section 44041.[2]
We conclude that even though a school district has broad authority to conduct its programs and activities, it may not assess a fee upon providers of deferred compensation plans to cover its costs of administering the plans for district employees.
[1] All references hereafter to the Education Code are by section number only.
[2] Our conclusion would be equally applicable to a community college district. (See §§ 70902, 87040.)